TALLMAN, Appellant, vs. CHIPPEWA SUGAR COMPANY, Respondent.

*October 7—November 18, 1913.*

*Master and servant: Injury to employee: Safety of working place: Beet pulp on floor of sugar factory: Nonsuit.*

1. In an action for personal injuries sustained by an employee in a beet sugar factory who slipped upon wet beet pulp on the

-floor of a well-lighted room through which the pulp was car-
ried by a conveyor, it is *held* that a nonsuit was properly
granted on the ground that the evidence failed to show that
the place was not, within the requirement of the Workmen's
Compensation Act (sec. 2394—48, Stats., as limited by the
definition of the term "safe" in sub. 11, sec. 2394—41), as free
- from danger as the nature of the employment would reason-
ably permit.

[2. To what extent, if any, the statute modifies the common-law duty
of the master to exercise ordinary care in furnishing a safe
working place, not determined.]


APPEAL from a judgment of the circuit court for Chip-
pewa county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

Plaintiff brought this action to recover damages for per-
sonal injuries. The defendant owned and operated a beet
sugar factory at the city of Chippewa Falls and employed a
large number of workmen, including the plaintiff, who per-
formed such work as he was directed. On the 24th day of
October, 1911, while in the course of such employment, and
about a week after he was hired, the plaintiff, as was his cus-
tom, in going to his place of work started to pass through a
room in defendant's factory called the pulp room, and as he
walked over the floor thereof he slipped on some wet pulp
lying on the floor, fell, broke his left leg, and sustained other
incidental injuries. The negligence charged was

"that the floor in said room was covered with pulp and ref-
use of the sugar beets, and that by reason thereof had be-
come wet and slippery, and any person going across said floor
would be likely to slip and fall thereon, which said facts
were at all times well known to the said defendant and were
unknown to this plaintiff; and that the negligence of said de-
fendant consisted in allowing and permitting the said pulp
and refuse of sugar beets to remain upon the floor of said
room so that the same would be slippery and unsafe for use,
and in failing to clean up the said room and remove the
sugar beets therefrom so that the same could be used by its
employees without danger to them."

The answer denied generally all the allegations of the complaint.    At the close of the plaintiff's evidence defendant moved for a nonsuit, which was granted by the court, and from such judgment of nonsuit the plaintiff appealed.

For the appellant there were briefs by *W. H. Frawley & T. F. Frawley,* and oral argument by *Mr. T. F. Frawley.*

For the respondent there was a brief by *W. H. Stafford,* attorney, and *T. J. Connor,* of counsel, and oral argument by *Mr. Stafford.*

VINJE, J.    The evidence shows that plaintiff in going to his work on defendant's premises went through an empty room, called the pulp room; that from one side of this room there extended diagonally across a portion of it, and through the ceiling, what is called a pulp screw.    This screw carried wet beet pulp from below to a room above.    Near the ceiling there was a leak in the screw and water and wet pulp dripped down, so that the floor beneath was covered to the depth of from a quarter of an inch to nearly an inch in thickness over a width of three or four feet and extending clear across the room.    Some pulp was also shown to come down from the floor above around where the pulp screw passed through the ceiling.    The pulp room was well lighted so that the condition of the floor was readily visible to any one passing over the same.    Plaintiff, while going to his work and while walking over the wet pulp, slipped and sustained the injuries complained of.

The claim is that the master failed to furnish plaintiff a safe place in which to work.    The injury occurred October 24, 1911, after the Workmen's Compensation Act took effect.    The duty of the master, therefore, to furnish a safe place of employment is governed by the provisions of sec. 2394—48, which require that "Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for

employees therein," as limited by the definition of the term "safe" found in sub. 11, sec. 2394—41. Such definition is as follows: "The term 'safe' and 'safety' as applied to an employment or a place of employment shall mean such freedom from danger to the life, health or safety of employees or frequenters as the nature of the employment will reasonably permit." Translating the statutory duty in terms of the definition, we find that it is the duty of the employer to furnish the servant with a place of employment as free from danger to the life, health, or safety of employees or frequenters as the nature of the employment will reasonably permit. In other words, the place of employment must be as free from danger as the nature of the employment will reasonably permit. This is a statutory rule which should receive a liberal construction in favor of life, health, and limb. It does not call for absolute safety in the ordinary sense of the term, but it does require every employer to furnish a place of employment as free from danger as the nature of the employment will reasonably permit. The extent, if any, to which the statute modifies the common-law duty of the master to exercise ordinary care in furnishing a safe place it is thought best now not to inquire into or to determine. The safe course is to tie to the statutory expression of the duty and apply it to cases as they arise. Such expression is so clear and simple that nothing can be made clearer by way of explanation or substitution of phraseology. Like the words "reasonable doubt" in the criminal law, the statutory declaration cannot well be further simplified. But while the test applied is plain, cases will no doubt arise in which there will be a difference of opinion as to whether the employer has complied with the test. Such was the case of *Sparrow v. Menasha P. Co.* 154 Wis. 459, 143 N. W. 317.

In the instant case the employer was operating a beet sugar factory in which beets were reduced to pulp and the pulp carried from room to room in conveyors and finally loaded on to

cars. Any one at all familiar with the operation of manufacturing sugar from beets as customarily carried on in large factories knows that the presence here and there of wet beet pulp is, if not a necessary, at least a usual, incident of such business. It would be practically impossible to operate such a factory without the presence, in places over which employees must walk, of more or less wet pulp. The making, handling, and presence of pulp is a feature of the work itself. The nature of the employment is such that it will not reasonably permit of an entire absence of pulp in places where employees may be required to work or pass over. Just as oil cannot be kept entirely away from the floor under and near an ordinary stationary engine, sawdust from certain parts of a sawmill, or dust from a flour mill or wheat elevator, so wet beet pulp cannot be kept entirely away from many places in a beet sugar factory where employees must work or pass over. Applying the statutory test to the situation as shown by plaintiff's evidence, we reach the conclusion that the trial court properly granted a nonsuit on the ground that the evidence failed to show that the place in question was not as free from danger as the nature of the employment would reasonably permit.

*By the Court.*—Judgment affirmed.