Holcomb, Respondent, vs. Szymczyk, Appellant.

*January 14—February 10, 1925.*

*Landlord and tenant: Public buildings: When safe for occupancy: Liability of landlord: Ice forming on unprotected landing: Injury to tenant.*

1. The duties of an owner of a public building to his tenant and that of an employer to an employee, under secs. 101.01 to 101.31, Stats., are not to be measured by the same standards, since the relations of landlord and tenant and of employer and employee are vastly different in fact and in law. p. 104.
2. The tenant at common law became the owner, in a sense, of leased property and had an estate in the leasehold, and took the premises as he found them, while the duty of the landlord to maintain and repair the premises was limited. p. 102.
3. A building is "safe," within the meaning of sec. 101.06, Stats. (providing that every owner of a public building shall maintain it so as to render the same "safe"), which is composed of proper materials and is structurally safe. The statute does not apply to temporary conditions having no relation to the structure of the building or the materials of which it is composed. p. 104.
4. Where an architect prepares plans and specifications for construction which render a public building safe within the meaning of sec. 101.06, Stats., and the owner thereafter maintains it in that condition, the statute is complied with so far as the duty owing by the landlord to the tenant is concerned, unless the owner expressly or impliedly reserves a portion for common use. p. 105.

5. Where a public building was composed of proper materials and contained no structural defects, it was "safe" within the meaning of sec. 101.06, Stats., and the landlord was not liable to a tenant for an injury to him occasioned by slipping on ice formed on a platform.  p. 106.              .

APPEAL from a judgment of the superior court of· Douglas county: ARCHIBALD McKAY, Judge.  *Reversed.*

Action by tenant against landlord under the provisions of ch. 101, Stats.  The defendant was the owner of a two-story frame residence building, arranged for and occupied by four families.  The plaintiff occupied one of the flats on the second floor.  The building had a flat roof with a court in the rear extending from the ground to the top and from the center of the building out into the back yard to provide light and ventilation.  Plaintiff and her family occupied the second-story flat on the south side of the building.  A door opened from the north side of plaintiff's flat onto the landing, which extended clear across the court, a distance of about six feet.  From the landing, a stairway extended to the ground at the rear of the building.  This stairway and platform was open, uncovered, and was used by the occupants of the two second-story flats.  The door leading from plaintiff's flat onto the platform opened to the inside of the hallway.  The storm door opened to the·outside and onto the platform.  On the night of January 3, 1921, after the evening meal and about 8:30 p. m., plaintiff picked up a rug, intending to shake the dust from it while standing on the landing.  She opened the door, slipped and fell, her feet slipping out from under her so that she fell with her feet to the north and her head to the south.  There was some dispute as to whether she tripped or slipped, but the jury found in favor of plaintiff's contention.  Plaintiff was helped into the flat, and it was thereafter found that she had sustained serious injuries by reason of a fracture of the femur of·the left·leg within the hip joint, union was delayed, and she was compelled to undergo two major operations.

This action was begun against the defendant, the owner of the building, to recover damages resulting from the injuries. The jury found in response to a special verdict that the plaintiff was injured at the time and place in question; that such injuries were caused by slipping upon ice formed on the platform at the rear door of the premises; that the building as it existed on January 3, 1921, was not so constructed as to be as safe to tenants occupying it as the nature of such building would reasonably permit; and that such failure was the proximate cause of plaintiff's injuries. The jury further found that the building on such day was not in a reasonably safe condition and that such fact was the proximate cause of plaintiff's injuries; that the plaintiff was not guilty of contributory negligence; and assessed plaintiff's damages at the sum of $2,800. The usual motions were made after verdict. The court directed judgment in favor of the plaintiff, from which defendant appeals.

Such other facts as are necessary to a determination of the questions raised will be stated in the opinion.

For the appellant there was a brief by *Grace, Fridley & Crawford* of Superior, and oral argument by *W. P. Crawford*.

For the respondent there was a brief by *Steele & Tipton* of Superior, and oral argument by *W. M. Steele*.

ROSENBERRY, J.   It is conceded that the building in question was a public building within the meaning of sub. (12), sec. 101.01, Stats. It appears also that the defendant was the owner thereof. Sec. 101.06 provides:

"Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so. construct, repair or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

By the provisions of sub. (11) of sec. 101.01 the term

"safe" as applied to a public building is defined, "shall mean such freedom from danger to the life, health, safety or welfare of employees or frequenters, or the public, or tenants, or firemen, and such reasonable means of notification, egress and escape in case of fire, and such freedom from danger to adjacent buildings or other property, as the nature of the employment, place of employment, or public building, will reasonably permit."

The provisions of this chapter applicable to a place of employment have been frequently before the court for consideration. The provisions applicable to a public building have been considered in *Zeininger v. Preble,* 173 Wis. 243, 180 N. W. 844; *Gobar v. Val. Blatz B. Co.* 179 Wis. 256, 191 N. W. 509; *Freimann v. Cumming,* 185 Wis. 88, 200 N. W. 662; *Kelenic v. Berndt,* 185 Wis. 240, 201 N. W. 250.

In *Zeininger v. Preble, supra,* it was held that the statute was applicable to public buildings even though the industrial commission had made no investigation and had taken no action under it, and it was said that the language of the statute with reference to the duty of the employer is the same as that relating to the duty of a landlord or other owner of a public building. From this it is argued in the present case by the respondent that the duty of an owner of a public building owing to his tenants is to be measured by the same standards as those applicable to the duty of an employer to an employee. This does not follow from the holding in *Zeininger v. Preble.* Manifestly, the relation of landlord and tenant in fact and in law is vastly different than the relation of employer and employee. The duties of a master to his servant do not remotely resemble the duties of a landlord to his tenant. The relationships are not even analogous and are derived from different sources in the law, and no doubt the legislature used the language found in the statute in the light of the legal history of these relationships.

At common law the tenant in a sense became the owner of the leased property and had an estate in the leasehold and

took the premises as he found them. The duty of the landlord to repair or maintain the premises was limited. *Kurtz v. Pauly,* 158 Wis. 534, 149 N. W. 143. The statute, however, imposes upon certain classes of landlords, the owners of public buildings, the duty to construct, repair, and maintain such buildings so as to render them safe as defined by the statute.

It is contended in this case that this duty was violated by reason of the fact that the building in question was not so constructed as to prevent ice and snow from falling or water from the eaves dripping upon the platform in question. It appears that the building was of flat-roof construction, with a fall from the front toward the rear of the building where the platform was situated; that along the west end or at the lower margin of the roof there was an eaves-trough or water conductor which led to a down spout, which ordinarily carried off water falling upon the roof; that on the day in question there had been a slight snow; that some water may have dripped from the melting snow and ice and fallen upon the floor of the platform, although upon that point the evidence is rather meager. It may have come from the side of the building, as it was snowing during the day. It is the contention here that because the building was not so constructed as to prevent the accumulation of ice and snow upon the platform, it was not as safe as the nature of the building would reasonably permit. If the law be so construed, it imposes upon the owners of public buildings duties and obligations to which they were entire strangers at the common law, and the record squarely presents the question whether or not the statute should be construed to refer to structural defects or whether it may be held to apply to conditions which are merely temporary and of a transitory character. The landlord in this case did not undertake to care for or remove the ice and snow from the platform or the rear steps. That was a duty assumed by the tenants who occupied the upper flats and used them. Manifestly, if a roof had been placed

over the platform, then the snow and ice would accumulate upon the steps; if it had been continued so as to protect the steps, there would still be some place where the protection would cease and the tenant would pass from the protection of the building to a place unprotected against the elements. If the statute be construed to mean that the owner of a public building must maintain it so that it is structurally safe, that is, it must be so designed and constructed of such materials as to be safe and must be maintained so that it does not become unsafe, as in *Zeininger v. Preble, supra,* it will greatly increase the burden of the landlord but will impose upon him a duty similar in character to those which rested upon him at the common law. The duty of a landlord to his tenant cannot be measured by the standards which are applicable to the relation of employer and employee. Each relationship has its own standards.

It is well known to every one and must have been known to the legislature that there are thousands of buildings in the state of Wisconsin constructed in just the manner that this building was constructed, used and occupied so as to bring them within the classification of public buildings as defined in the statute. It is difficult to believe that the legislature intended to throw upon these owners the burden of practically insuring the occupants thereof against possible injury by compelling them to cover every part of the premises so as to protect the same against snow, ice, and rain. It is considered that a building is safe, within the meaning of the statute, which is composed of proper materials and is structurally safe, and that the statute does not apply to temporary conditions having no relation to the structure of the building or the materials of which it is composed. *Juul v. School Dist.* 168 Wis. 111, 169 N. W. 309.

Our conclusion in this respect is strengthened by the fact that the first clause of sec. 101.06, which imposes upon an employer the duty of furnishing a place of employment which shall be safe, refers to the conditions under which the

employee is required to perform his duty, and no doubt has a special reference to machinery, location of movable objects, and other things of more or less temporary and transitory character. *Waskow v. Robert L. Reisinger & Co.* 180 Wis. 537, 193 N. W. 357. Care must be taken to distinguish between a "place of employment" and a "public building." Combining regulations as to these unrelated subjects in one statute may be convenient from the draftsman's point of view, but it presents a complex question of statutory construction. In the last clause of the section the statute imposes upon every employer as well as upon every owner and upon every architect certain duties with reference to the construction of a public building. Manifestly, an architect has nothing to do with a building except to specify the materials and design the plan of its construction. If a building is built, composed of such materials and so designed as to be safe within the meaning of the statute, it must continue to be safe so long as it is maintained in that condition. While the duty of repair and maintenance is cast upon the owner and in certain contingencies upon the employer, their duty with reference to construction is the same as that of the architect. If an architect devises or prepares plans and specifications for construction which render a public building safe within the meaning of the statute and the owner thereafter maintains it in that condition, the statute is complied with so far as the duty owing by the landlord to his tenant is concerned unless the owner expressly or impliedly reserves to himself parts of the building which are to be used in common by different tenants, an exception which is not applicable here. See note in 25 A. L. R. 1273. As to his duty under such circumstances we shall say nothing. We shall go no farther than is necessary to decide the question presented in this case. Questions arising under this statute are novel and difficult, and it is much wiser to await a concrete case than to anticipate possible situations.

While it appears by the testimony of architects that a roof

over the platform or some sort of a canopy or parapet wall might have prevented the particular accident in question, it would in turn have created new situations which might have resulted in some other accident. The owner is not made liable for accidents which may occur upon premises which are as safe as the nature of the building reasonably permits. The accident here occurred from a cause which is common to all premises in northern climates. It is not contended in this case that the defendant was in any way liable at common law or that any of the provisions of the building code were violated. Liability here is predicated wholly under the safe-place statute. The building being composed of proper materials and there being no structural defect in the building, it was as safe as the nature of the building reasonably permitted, and the defendant therefore violated no duty owing to the plaintiff and is not liable.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.