CRONCE, Respondent, vs. SCHUETZ, Executrix, Appellant.

*December 3, 1941—January 13, 1942.*

For the appellant there were briefs by *Genrich & Genrich,* attorneys, and *Herbert L. Terwilliger, James A. Fitzpatrick,* and *William J. Hoffmann* of counsel, all of Wausau, and oral argument by *Mr. Terwilliger.*

For the respondent there was a brief by *Earl J. Plantz* of Antigo and *E. P. Gorman* of Wausau, and oral argument by *Mr. Plantz.*

MARTIN, J. Defendant contends that the court erred in overruling her motion for a nonsuit and in overruling her motion for a directed verdict; and also erred in submitting the case to the jury as one coming under the safe-place statutes. Defendant further contends that the court erred in overruling her motion to dismiss notwithstanding the verdict and in not changing the answers to the first and second questions of the verdict from "Yes" to "No," and in not changing the answer as to comparative negligence on the part of the defendant from seventy-five per cent to none.

The material parts of sec. 101.06, Stats., provide:

"Every employer shall furnish . . . a place of employment which shall be safe for employees therein and for frequenters thereof . . . and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building . . . as to render the same safe."

The material parts of sec. 101.07 (1), Stats., provide:

"No employer shall . . . fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employees and frequenters; and no employer or owner, or other person shall hereafter construct or occupy or maintain any place of employment, or public building, that is not safe. . . ."

It appears without dispute that on December 13, 1939, shortly after 11 a. m., the plaintiff entered the Dunbar building for the purpose of calling at the Liberty Loan office which was located on the second floor of said building. Plaintiff ascended the stairs up to the second floor. The stairway enters an open hallway off of which six offices are located. The Liberty Loan office was to the left of the stair landing.

At the time plaintiff entered the building the woman in charge of cleaning was mopping the hallway immediately to the left of the stair landing and in front of the Liberty Loan office. Plaintiff testified that when he got to the top of the stairs he saw the cleaning woman in the hallway; that he did not know whether she had a mop in her hand; that he asked this woman which door the Liberty Loan used; that as she pointed to the door he took one or two steps and fell. Plaintiff further testified that he did not pay any attention to the floor; that he did not know the floor was wet until after he fell. Plaintiff was asked:

"*Q*. Didn't you stop and ask this woman whether or not you could cross the wet floor? *A*. No, sir. I asked her if I could pass. I didn't want to walk over the top of her. She stood right in my way and I asked her if I could pass."

It is not claimed that there was any unusual amount of water on the floor at the time and place plaintiff fell.. In mopping the floor the cleaning woman had not reached the wiping-up process. It was a wooden floor and there was no soap or soap chips upon the floor. Some soap chips had been dissolved in the water before mopping operations were begun. No claim is made that there was any defect in the floor but merely that the floor was slippery. Plaintiff testified that he did not notice that the floor was slippery until after the accident.

The complaint states a cause of action for ordinary negligence; also that the injuries and damages to the plaintiff were proximately caused by reason of the failure of the owner of the building to comply with secs. 101.06 and 101.07, Stats., commonly known as the safe-place statutes. No request was made for submission of ordinary negligence. At the conclusion of the evidence defendant moved the court to instruct the jury to return a verdict for the defendant, on the ground that no negligence was proved and that on the evidence the safe-place statutes do not apply. Plaintiff moved the court to an-

swer the questions as to the violation of the safe-place statutes in the affirmative. Both motions were denied and the case was submitted to the jury under the safe-place statutes. The deceased Letitia Single Dunbar was the owner of the public building in question. She was an employer. When injured, plaintiff was a frequenter within the meaning of secs. 101.06 and 101.07.

However, the question is: Was there any violation of duty to the plaintiff on the part of the owner of the building? Respondent argues that the woman doing the mopping in the hallway should have done one of three things: She should have warned plaintiff that she had just scrubbed the floor with soapy water; or should have told him to be careful in walking on the floor; or she should have told him that the floor was slippery. Respondent also argues that the mopping of the hallway could have been deferred until after the tenants had left the building. The safe-place statutes do not require the owner of the premises resorted to by the public to do the impossible or the unreasonable in maintaining its premises in a safe condition. *Heckel v. Standard Gateway Theater,* 229 Wis. 80, 84, 281 N. W. 640.

In *Erbe v. Maes,* 226 Wis. 484, 277 N. W. 111, which was an action against a storekeeper for injury sustained by a customer when she caught her foot on the end of a rubber mat at the entrance to the store and fell, the mat being approximately six feet in length, two feet nine inches in width, one-third inch in thickness, the court held the evidence insufficient to raise a jury question under the safe-place statutes.

Martha Yanke, the woman doing the mopping, testified that she was mopping at the time; that she had put a few soap chips in the water; that she had just wet the floor when plaintiff came and wanted to get across:

"He stood there like if he wanted to know if he could, and I said he could go across. . . . I was mopping between the

Liberty Loan office and the head of the stairs. He walked in a ways and then he slipped. . . . The floor was not any more slippery than any other floor that is being washed. I have never slipped and I have cleaned floors for 16 years. It just happened to be that he slipped. All the years that I have cleaned I have never had that happen before. . . . I did not use any other substance in the water except the soap flakes. I scrubbed the floor with a mop. It was just a common mop made from old cloth and old rags. . . . Right in the corner was where I was mopping. When this man [plaintiff] came up that day I had already wet the floor. It wasn't wiped up yet. I hadn't as yet used the dry mop to mop up the floor."

The safety required under the safe-place statutes is not absolute safety. In *Tallman v. Chippewa Sugar Co.* 155 Wis. 36, 39, 143 N. W. 1054, the court said:

" 'The term "safe" and "safety" as applied to an employment or a place of employment shall mean such freedom from danger to the life, health or safety of employees or frequenters as the nature of the employment will reasonably permit.' Translating the statutory duty in terms of the definition, we find that it is the duty of the employer to furnish the servant with a place of employment as free from danger to the life, health, or safety of employees or frequenters as the nature of the employment will reasonably permit."

The time-honored use of the mop even in cleaning a public building has not been outlawed. The argument that the mopping of the hallways should have been deferred until after the close of business hours is without merit.

This is not such a case as *Schroeder v. Great Atlantic & Pacific Tea Co.* 220 Wis. 642, 265 N. W. 559. In that case the owner of a store at the close of the business day spread a floor-cleaning compound, which had been dipped in a liquid, upon the floor of the store. The compound was swept up the following morning. Over night the floor absorbed some of the liquid from the compound. An oily substance remained at places on the floor. At about 11:45 a. m. a customer

in the store slipped on the floor where the oily substance had remained, fell, and sustained injuries. The storekeeper was held liable. The facts are clearly distinguishable from those in the instant case. The distinction is recognized in *Mohl v. Chase Nat. Bank,* 294 N. Y. Supp. 534, 536, 162 Misc. 771. In that case the court said:

"It seems to be established that liability cannot be predicated of a wet or soapy or slippery floor while the act of cleaning is in process. Liability may be shown where the lobby, the floor, or the stairs were left in a wet, slippery, and dangerous condition after the washing had been completed. Liability in such a case, of course, will depend upon the care or lack of it used in the cleaning and mopping up, and upon the length of time that elapses between the washing and the drying."

Granting as we must that the scrubbing or mopping of the hallways in a public building is an indispensable act in the maintenance of the building, we think it cannot be held that the temporary wetting of the floor in the process of scrubbing or mopping, even though such a wet condition may tend to make the floor for the time being slippery, can be made the basis of liability against the owner. It is considered that the evidence is insufficient to raise a jury question and that defendant's motion for a directed verdict should have been granted.

*By the Court.*—Judgment reversed. Cause remanded with directions to dismiss the complaint.