GRABINSKI and wife, Appellants, vs. ST. FRANCIS HOSPITAL, Respondent.

*March 1—April 6, 1954.*

340

For the appellants there were briefs by *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, and oral argument by *Quincy H. Hale.*

For the respondent there was a brief by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Robert D. Johns.*

BROADFOOT, J.   Prior decisions of this court have established that a charitable institution is immune from tort liability within this state, except that such an institution is liable to the same extent as any private individual or corporation for a violation of the safe-place statute. *Wilson v. Evangelical Lutheran Church,* 202 Wis. 111, 230 N. W. 708; *Bachman v. Young Women's Christian Asso.* 179 Wis. 178, 191 N. W. 751; *Waldman v. Young Men's Christian Asso.* 227 Wis. 43, 277 N. W. 632.

The differences in scope between the duties of employers and owners of public buildings under the safe-place statute are pointed out in *Jaeger v. Evangelical Lutheran Holy Ghost Congregation,* 219 Wis. 209, 262 N. W. 585, and cases there cited. Under these decisions it is apparent that the defendant is not an employer as defined in the safe-place statute, nor is its hospital such a place of employment as referred to therein. It is, however, the owner of its hospital, which is a public building. The duty of the defendant as an owner of a public building to maintain the same has no application to temporary conditions unrelated to the structure of the building or the material of which it is composed. *Waldman v. Young Men's Christian Asso., supra; Jaeger v. Evangelical Lutheran Holy Ghost Congregation, supra; Holcomb v. Szymczyk,* 186 Wis. 99, 202 N. W. 188.

Upon an appeal from a judgment based upon a directed verdict, our review of the record requires us to consider the evidence most favorable to the plaintiff and to give her the benefit of every favorable inference which can reasonably be drawn therefrom.

All of these rules were before us in making our review of the record herein. Our search of the record reveals no claim of any defects in the floor itself, no claim is made that it was other than level, or that it was improperly constructed or surfaced in any manner. There is no claim that anything

was on the floor except some rain water. However, the water upon the floor, so far as the record shows, was a temporary condition unrelated to the structure of the building or the material of which it was composed.

The safe-place statute, as it relates to a public building, does not require the owner to post signs warning of a temporary slippery condition, to provide a nonskid tread because of a temporary condition, or to mop up and remove water created by a natural hazard, such as a rainstorm. It has been held, however, that failure to provide adequate lighting in a public building is a violation of the safe-place statute. *Wilson v. Evangelical Lutheran Church,* 202 Wis. 111, 230 N. W. 708; *Heiden v. Milwaukee,* 226 Wis. 92, 275 N. W. 922; *Zimmers v. St. Sebastian's Congregation,* 258 Wis. 496, 46 N. W. (2d) 820. If there was evidence from which it might reasonably be inferred that the entranceway was inadequately lighted, a jury question was presented and the defendant's motion for a directed verdict should not have been granted.

The record discloses that the accident happened in mid-afternoon on September 9, 1951. The record further discloses that there is a window in the east wall of the entranceway and a pane of glass of undisclosed size in the upper part of the door. The testimony of the plaintiff with respect to whether or not the areaway was dark is as follows:

(Direct Examination.)

"*Q.* Now September 9th, 1951, when you were going to the hospital with your husband as you have testified, what kind of a day was it, Mrs. Grabinski? *A.* It was a dark, rainy day and there was a continuous rain, but it wasn't just what you would call a thunderstorm, it was a continuous rain, a dark day. . . .

"*Q.* And how about the condition of light as you went in the entrance? *A.* There wasn't any light other than what came

in the window, but ordinarily that isn't a place that is especially dark. . . .

"Q. Now I don't remember whether I asked you whether or not there was any artificial light in the entranceway such as an electric light when you entered there? A. When I entered there I didn't see any light."

(Cross-Examination.)

"Q. I believe you stated on direct examination you knew this entranceway as well as this whole hall, is that right? A. Yes.

"Q. So that in so far as your conduct on this day, you could have gone in that entranceway up the stairs without even looking? A. Yes.

"Q. And it made no difference to you whether it was light or dark? A. No.

"Q. You weren't looking to see where you were going because you knew where you were going? A. Yes. . . .

"Q. Do you remember, Mrs. Grabinski, being adversely examined on April 29th, 1953, at 2 p. m. in the office of Mr. Skemp? A. Yes, I do. . . .

"Q. Page 6, near top: Do you remember being asked this question: 'When you opened the door did you make any observation of the condition of the floor inside the entrance?' and do you remember making this answer: 'I didn't really notice, it was awful wet because when you open the door the rain sweeps in and it's all wet. Question, You saw that when you opened the door? Answer, Yes. . . . Question, You noticed that on that day? Answer, Yes. Question, There's enough light in there so you could see the floor and the nurse and the wheelchair and everything of any consequence? Answer, Ordinarily I'd say it would be light, but by being such a dark day, it was rather dark. Question, It wasn't so dark that you couldn't see what you normally would see? Answer, I could see where I was going. Question, It wasn't a question of your proceeding in the dark without knowing what you were walking on or where you were going? Answer, No, I could see.' Remember being asked those questions and making those answers? A. Yes, I do.

"Q. Now I believe you said on direct examination you didn't see any light in the entranceway, do you mean you

didn't see any light bulb or what? *A.* I didn't notice anything. I wouldn't know. I didn't notice the light of any kind."

The record discloses that the plaintiff was familiar with the entranceway; that she fell after taking only a couple of steps inside the building; that she saw the water on the floor; that she could see where she was going; and a further statement that she could see. There was no other testimony as to the visibility in the entranceway at the time of the accident. From the record a finding by the jury that the areaway was insufficiently lighted would necessarily have been based upon conjecture and speculation.

The plaintiff next contends that charitable organizations are liable for damages caused by the maintenance of a nuisance, relying upon *Smith v. Congregation of St. Rose,* 265 Wis. 393, 61 N. W. (2d) 896. As a statement of the law, that is correct. No nuisance was pleaded, however, nor does the record establish the maintenance of a nuisance by the defendant. The plaintiff also cites the case of *Wright v. St. Mary's Hospital of Franciscan Sisters,* 265 Wis. 502, 61 N. W. (2d) 900, as authority for the statement that the safe-place statute lays down a standard of care for those buildings to which it applies; that a violation of that duty constitutes negligence; and a negligent violation of that statute creates a nuisance for which the owner of the building may be held liable. We can find no language in that decision which would support the contention.

Upon the trial the plaintiff wished to introduce evidence of a policy of liability insurance carried by the defendant, and in particular a provision thereof that the insurance company would not interpose a defense that the insured is a religious, eleemosynary or educational institution as to any suit or claim arising under the policy, except at the option of the insured. The original answer filed did not set up such a defense but an amended answer was filed a short time before the trial in

which that defense was interposed. In connection therewith the plaintiff made an offer of proof by which she offered to testify, if permitted, that the adjuster for the insurance company agreed to settle her claim for an amount equal to her hospital expense; that she contacted the manager of the defendant and was advised not to settle for that amount but to bring suit to recover an adequate amount for her injuries, and the manager indicated that St. Francis Hospital was willing and ready to waive the provision contained in the policy relative to the defense that St. Francis Hospital is an eleemosynary corporation. The plaintiff contended that the evidence offered would be sufficient to establish an estoppel on the part of the hospital to permit the insurance company to interpose the defense set out in the amended answer.

The offer of proof omitted two essential elements. First, there should have been an offer to prove that the plaintiff relied upon the representation or statement alleged to have been made by the manager of the defendant. *Estate of Smith,* 226 Wis. 556, 277 N. W. 141. Also, it would have been necessary for the plaintiff to allege that she had done or omitted to do some act or had changed her position in reliance upon the representation or statement of the other party. *Williams v. Jensen (Dixon v. Davidson),* 202 Wis. 19, 231 N. W. 276. The plaintiffs' complaint was based entirely upon a violation of the safe-place statute, and at the close of the trial plaintiffs' attorney made the following statement: "Yes, we are not proceeding on the basis of negligence. Our complaint is based on the safe-place statute."

The added defense that defendant was a charitable corporation was no defense if any violation of the safe-place statute had been proven. The trial court, therefore, properly excluded the evidence offered.

*By the Court.*—Judgment affirmed.