WATRY, Appellant, vs. CARMELITE SISTERS OF THE DIVINE HEART OF JESUS, Respondent.*

*December 5, 1956—January 7, 1957.*

---

\* Motion for rehearing denied, with $25 costs, on March 5, 1957.

For the appellant there was a brief by *Hanley & Wedemeyer,* attorneys, and *William P. McGovern* and *Robert F. Cavanaugh* of counsel, all of Milwaukee, and oral argument by *Mr. McGovern.*

For the respondent there was a brief by *Lines, Spooner & Quarles,* attorneys, and *James C. Mallien* of counsel, all of Milwaukee, and oral argument by *Mr. Mallien.*

Brown, J.   Appellant does not challenge the conclusion that respondent's liability is that of an owner of a public building subject to such an owner's obligations under the Wisconsin safe-place statute.   The material parts of that statute are:

"Sec. 101.06 Employer's duty to furnish safe employment and place. . . . Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair, or maintain such place of employment or public building, . . . as to render the same safe."

The word "safe" is defined in sec. 101.01 (11), Stats.:

"The term 'safe' . . . as applied to . . . a public building, shall mean such freedom from danger to the life, health, safety, or welfare of employees or frequenters, or the public, . . . as the nature of the employment, . . . or public building, will reasonably permit."

*Wilson v. Evangelical Lutheran Church* (1930), 202 Wis. 111, 230 N. W. 708, cited by appellant, did not touch on owner's obligations as master for the act or neglect of a servant. It held only that charitable corporations which are owners of public buildings are not exempt from the obligations imposed on owners, generally, by the safe-place statute. That we have held uniformly that the charitable corporation is not liable for the common-law negligence of its servants and agents is demonstrated by the following cases which are cited in appellant's brief to other points: *Harnett v. St. Mary's Congregation* (1956), 271 Wis. 603, 607, 74 N. W. (2d) 382; *Grabinski v. St. Francis Hospital* (1954), 266 Wis. 339, 342, 63 N. W. (2d) 693; *Jaeger v. Evangelical Lutheran Holy Ghost Congregation* (1935), 219 Wis. 209, 210, 262 N. W. 585. See also *Baldwin v. St. Peter's Congregation* (1953), 264 Wis. 626, 630, 60 N. W. (2d) 349, and *Bachman v. Young Women's Christian Asso.* (1922), 179 Wis. 178, 180, 181, 191 N. W. 751. Conceding, then, for

the purpose of the argument that the janitor was negligent in absenting himself without providing a safeguard at the place where he was working, liability for the results of his negligence cannot be transferred to his employer, a charitable corporation, by the doctrine of *respondeat superior*. The liability, if any, must arise because the action of the employee, whether negligent or not, created a building which was unsafe within the terms of the statute.

In the contemplation of the statute the charitable corporation-owner is just like any other owner, so in our search for authority we need not confine ourselves to decisions dealing only with charitable corporations. In *Holcomb v. Szymczyk* (1925), 186 Wis. 99, 202 N. W. 188, and *Baldwin v. St. Peter's Congregation, supra,* we have held that a building is safe, within the meaning of the statute, if it is composed of proper materials and is structurally safe and the statute does not apply to temporary conditions having no relation to the structure of the building or the materials of which it is composed. In the *Holcomb Case* the owner was not liable when a platform became slippery from an accumulation of ice and plaintiff slipped, fell, and was injured. In *Grabinski v. St. Francis Hospital, supra,* storm water blew into the building making the floor slippery and a frequenter was injured. We observed that the water on the floor was a temporary condition unrelated to the structure or the materials of which it was composed, and decided as we did in *Holcomb*.

In *Jaeger v. Evangelical Lutheran Holy Ghost Congregation, supra,* we affirmed the obligation of an owner of a public building in his duty of maintenance to prevent the floors from becoming oily, greasy, and slippery. In *Juul v. School Dist.* (1918), 168 Wis. 111, 169 N. W. 309, a pupil fell over a pail containing hot water and chemicals to be used in cleaning the schoolroom floor. We held that "maintain" especially when used in connection with "construct" and "repair" must be held to relate to some act more closely related to the structure of a building than the operations

involved in keeping its floors clean. *Cronce v. Schuetz* (1942), 239 Wis. 425, 1 N. W. (2d) 789, was an action by a frequenter against the owner of a building under the safe-place statute. At the time and place of plaintiff's fall a cleaning woman was mopping the floor which was wet with soapy water and was slippery. The jury found the owner failed to maintain the hall in a safe condition. We reversed a judgment for plaintiff saying that no claim was made that the floor was defective, only that it was slippery. "The safe-place statutes do not require the owner of the premises resorted to by the public to do the impossible or the unreasonable in maintaining its premises in a safe condition." (p. 429.) Also (p. 431):

"Granting as we must that the scrubbing or mopping of the hallways in a public building is an indispensable act in the maintenance of the building, we think it cannot be held that the temporary wetting of the floor in the process of scrubbing or mopping, even though such a wet condition may tend to make the floor for the time being slippery, can be made the basis of liability against the owner."

As shown by the *Juul* and *Cronce Cases, supra,* a plaintiff seeking recovery under the safe-place statute from the owner of a public building must do more than show that the hazard from which he suffered was caused by a maintenance activity. He must show, also, that the defect is not due to a mere temporary condition attendant upon that activity and that the operation of whose details he complains is connected to a reasonable degree with the safety of the structure or the materials of which it is composed. We consider that the excess wax momentarily present during the waxing operation is like the soapy water temporarily on the floor in the *Cronce Case* and did not render the building unsafe within the meaning of sec. 101.06, Stats.

A caution must be noted, however, that respondent escapes liability in this action because it is a charitable corporation to whom in negligence matters the doctrine of *respondeat*

*superior* does not apply. The ordinary owner of such a building on these facts would not be so fortunate.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). I must respectfully dissent from the majority opinion herein because of my conclusion that a jury issue is presented as to whether the defendant corporation is liable under the safe-place statute for the damages resulting from plaintiff's injury.

In *Brown v. Appleton Masonic Temple Asso.* (1943), 243 Wis. 147, 9 N. W. (2d) 637, this court upheld a direction of a nonsuit in an action to recover damages resulting from a fall on a slippery ballroom floor. In passing upon the issue of liability under the safe-place statute, this court stated (p. 149):

"There was no proof that there was such an accumulation of wax, or any foreign substance, or water, or defect on the floor as to cause plaintiff to slip. To facilitate the usual, proper use of a ballroom floor for dancing it is necessary and customary to have it slippery by waxing it. Consequently the facts merely that the floor was waxed and slippery cannot be held to constitute a violation of the safe-place statute in the absence of proof that there was such an excessive accumulation of wax or some foreign substance, or some defect because of which it was not as free from danger as the nature of the place would permit; and therefore was not 'safe' within the meaning of that term as used in secs. 101.01 (11) and 101.06 of the safe-place statutes."

We interpret this statement as holding that if there had been an unusual accumulation of wax on the floor in the *Brown Case* there might have been liability. This is because it would have been directly related to the maintenance of a public building.

In the instant case there was an unusual accumulation of wax on the floor. The majority opinion holds that there is no liability because the condition was temporary. We consider

that the past decisions of this court correctly interpreted do not establish such a principle.

This court has consistently held that the failure to turn on a light in a public building may impose liability under the safe-place statute. *Zimmers v. St. Sebastian's Congregation* (1951), 258 Wis. 496, 46 N. W. (2d) 820; *Kinney v. Luebkeman* (1934), 214 Wis. 1, 252 N. W. 282; and *Wilson v. Evangelical Lutheran Church* (1930), 202 Wis. 111, 114, 230 N. W. 708. The condition which prevails as a result of failing to turn on a light already installed in the premises certainly falls within the category of a temporary condition.

It is only "temporary conditions *wholly disassociated from the structure*" which preclude imposition of liability under the safe-place statute. *Jaeger v. Evangelical Lutheran Holy Ghost Congregation* (1935), 219 Wis. 209, 212, 262 N. W. 585; and *Harnett v. St. Mary's Congregation* (1956), 271 Wis. 603, 610, 74 N. W. (2d) 382. The wax applied to a floor of a public building constitutes maintenance and is associated with the structure.

The rationale of the majority opinion seems to be that anything having to do with the act of maintenance of a public building which is temporary in character relieves the owner from liability under the safe-place statute. We consider that this is reading an exception into the statute which is not permissible. The term *"safe"* as used in the safe-place statute is defined in sec. 101.01 (11), Stats., which definition is quoted in the majority opinion. An act of maintenance or repair which is not carried on in a manner that is as free from danger as the building "will reasonably permit" clearly violates the safe-place statute.

Much reliance is placed by the majority opinion of this court on the cases of *Juul v. School Dist.* (1918), 168 Wis. 111, 169 N. W. 309, and *Cronce v. Schuetz* (1942), 239 Wis. 425, 1 N. W. (2d) 789. In both of those cases the

injuries resulted from a temporary unsafe condition connected with the cleaning of floors, not the waxing thereof. The *Juul Case* distinctly held that cleaning a floor is not an act of maintenance within the meaning of the safe-place statute. Therefore, it is a temporary condition disassociated with the structure of the building. While the *Cronce Case* seems to hold that cleaning floors constitutes maintenance, liability was not imposed because there was no showing that the floor-cleaning operation was being done in a negligent manner, and it would be asking the "unreasonable" of the owner to require that he only clean floors after all of the tenants had left the building.

However, the applying of a wax coating to a floor stands in the same category as paint applied to a wall and is maintenance connected with the structure. In the instant case the waxing operation was not being conducted in as safe a manner as the premises would reasonably permit, or at least a jury would clearly be warranted in so finding this to be the case from the testimony that the defendant's employee left the puddle of wax on the floor unguarded while he went to a distant part of the building to get more wax.

I am authorized to state that Mr. Justice WINGERT joins in this dissent.