GILSON, Appellant, v. DREES BROTHERS, Respondents.

*February 5—March 5, 1963.*

For the appellant there were briefs by *Dudley O. Emmert* of Manitowoc, and *Emmet W. Rohan* of Kaukauna, and oral argument by *Mr. Emmert.*

For the respondents there were briefs by *Lehner, Lehner & Behling,* and *Adolph P. Lehner* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Howard N. Lehner.*

GORDON, J. The test for determining whether a verdict should be directed is whether "the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." *Rusch v. Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405. See also *McDonald v. Bituminous Casualty Corp.* (1960), 11 Wis. (2d) 202, 205, 105 N. W. (2d) 312; *Wadoz v. United National Indemnity Co.* (1957), 274 Wis. 383, 390, 80 N. W. (2d) 262.

Another rule which has pervaded our study of this appeal is the familiar one which requires a court in weighing a defendant's motion for a directed verdict to regard evidence in a light most favorable to the plaintiff. *Rudzinski v. Warner Theatres* (1962), 16 Wis. (2d) 241, 243, 114 N. W. (2d) 466.

### 1. *The Relative Negligence of the Parties.*

The learned trial judge concluded that the negligence of Mr. Gilson was at least as great as that of the defendants. Ordinarily the comparison of negligence is "peculiarly within the jury's province." *Bailey v. Bach* (1950), 257 Wis. 604, 609, 44 N. W. (2d) 631. See also *Jankovich v. Arens* (1952), 262 Wis. 210, 215, 54 N. W. (2d) 909. In *Davis v. Skille* (1961), 12 Wis. (2d) 482, 489, 107 N. W. (2d) 458, it was said:

"While this court has in a number of cases determined as a matter of law that the negligence of a plaintiff equaled or exceeded that of one or more defendants, it has also stated that the instances in which a court can so rule will be extremely rare. *Kraskey v. Johnson* (1954), 266 Wis. 201, 204, 63 N. W. (2d) 112, and *McGuiggan v. Hiller Brothers* (1932), 209 Wis. 402, 407, 245 N. W. 97."

Our review of the testimony persuades us that the jury reasonably could have found less than 50 percent of the negligence on the part of the plaintiff. This necessitates a reversal even though we acknowledge that a jury finding of more than 50 percent negligence on the part of the plaintiff might also be reasonable. The plaintiff offered enough proof to entitle him to have his case resolved by the jury. In *Davis v. Skille, supra,* page 485, it was noted that ". . . it is hornbook law that the weight to be accorded competent and relevant evidence is for the jury and not the court."

What was the proof which entitled the plaintiff to have his case submitted to the jury? Viewed in its most-favorable

light to Mr. Gilson, the testimony showed that he was injured by the sudden lunge of a one-year-old bull weighing 500 pounds. The bull was introduced into the auction ring without warning to the customers and without being guarded or tethered. It is the common practice at livestock sales not to send untethered bulls into the auction ring. The absence of a warning and the custom of using special caution with bulls distinguish this case from *Powless v. Milwaukee County* (1959), 6 Wis. (2d) 78, 94 N. W. (2d) 187.

There was testimony to show that the plaintiff was seated in the auction ring along with several other customers. What happened is described by Mr. Jacobs, who was seated on the same bench:

"Well, as I recall we were on the bench and the animal suddenly seemed to be coming right at my little boy sitting alongside and Mr. Gilson pushed him back where he rolled over the bar through the ring and the animal hit into him directly."

Mr. Jacobs had been a livestock buyer for over thirty years. His testimony as to the dangerous propensities of bulls is credible. He even stressed the quickness of younger bulls. In addition, the plaintiff and his brother both testified as to the distinction between the handling of bulls and cows, stressing the extra caution which is practiced with the former.

The writer of this opinion professes no personal familiarity with the proclivities of bulls. However, the record in this case tends to support the tales which are often told of their dangerous characteristics. Also, we take judicial notice of sec. 172.01, Stats., which creates statutory liability for permitting bulls over six months of age to run at large. Mr. Jacobs testified that the bull in question was approximately one year old. Finally, Restatement, 3 Torts, p. 21, sec. 509, describes a bull as an animal with "normal dangerous characteristics."

All these factors are convincing that a jury question was presented as to the relative negligence of the plaintiff and the handlers of the bull. The trial court should not have directed a verdict against the plaintiff.

## 2. *The Safe-Place Statute.*

The trial judge noted that there was no claim that there was a structural defect in the equipment used in connection with the defendants' building. The court found no physical defects in the auction room where the accident occurred. While the auction ring may have been a place of employment, it does not follow that the defendants violated the safe-place statute. In *Ball v. Madison* (1957), 1 Wis. (2d) 62, 65, 82 N. W. (2d) 894, we stated that ". . . a place of employment can be almost any place." The safe-place statute deals with unsafe conditions and not with negligent acts as such. *Deaton v. Unit Crane & Shovel Corp.* (1953), 265 Wis. 349, 61 N. W. (2d) 552.

The placing of a bench within the sales ring was not, in itself, an act of negligence nor did it make the premises unsafe. Insofar as it constituted an invitation to customers to sit there, it imposed a duty on the defendants to use proper precautions upon bringing out the animals. It was a circumstance which the trier of fact was entitled to consider in evaluating whether the defendants acted negligently (1) in connection with their giving customers a warning of the approaching animals, or (2) in the manner in which they brought out the animals.

Locating the bench in the auction ring did not even create a defect of a temporary nature, such as was discussed in *Watry v. Carmelite Sisters* (1957), 274 Wis. 415, 419, 80 N. W. (2d) 397 (slippery waxed floor), or as existed in *Uhrman v. Cutler-Hammer, Inc.* (1957), 2 Wis. (2d) 71, 85 N. W. (2d) 772 (unsafe stacking of wooden ramps).

The instant case is different from *Klein v. Montgomery Ward & Co.* (1953), 263 Wis. 317, 321, 57 N. W. (2d) 188, in that the woven wire lying on the floor in the latter case was capable of causing injury in and of itself, as it did when the plaintiff in that case tripped on it. The bench in the case at bar did not possess this quality.

We conclude that there was no safe-place violation on the part of the defendants.

### 3. *Assumption of Risk.*

The plaintiff was a man with wide experience in the ways and propensities of animals, and the trial judge, in his memorandum decision, observed that because of this knowledge and experience the plaintiff "assumed the risk of being injured in the manner that he was injured."

The defense of assumption of risk has been abolished by this court as it applies to certain cases. *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 113 N. W. (2d) 14 (host to guest in automobile); *Colson v. Rule* (1962), 15 Wis. (2d) 387, 113 N. W. (2d) 21 (employer to employee on farm); cf. *Lee v. National League Baseball Club* (1958), 4 Wis. (2d) 168, 89 N. W. (2d) 811.

The policy reasons which prompted the court to abrogate the doctrine of assumption of risk as an absolute defense in those cases do not apply with comparable clarity in the instant case. However, it is our opinion that greater fairness will result if the claimed negligence of Mr. Gilson is couched in terms of contributory negligence rather than in terms of assumption of risk. This will be true whenever the alleged assumption of risk arises by implication, as here, as opposed to an express assumption of a known risk. This would serve to extend the rule adopted in the *McConville* and *Colson Cases* to all situations involving the tacit assumption of risk. Accordingly, on the retrial of this action the doctrine of as-

sumption of risk should not be applied with reference to Mr. Gilson's conduct.

### 4. *The Application of Wells v. Dairyland.*

The appellant is bound by the rule in *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. (2d) 380. In that case this court held:

". . . no error of the court should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error is of a category that a trial court could correct by granting a new trial."

The appellant did not bring a motion for a new trial before the trial court so that the latter could re-examine the propriety of its having granted a directed verdict. The reasons behind the rule requiring that the trial court be given an opportunity to correct its own error by granting a new trial are expressed in the *Wells Case,* at page 516.

The appellant contends that the rule set forth in *Wells v. Dairyland Mut. Ins. Co.* did not become unequivocally applicable to motions for directed verdicts until this court's ruling in *Peterson v. Wingertsman* (1961), 14 Wis. (2d) 455, 111 N. W. (2d) 436. The *Peterson Case,* at page 461, asserted that *Plankinton v. Gorman* (1896), 93 Wis. 560, 67 N. W. 1128, was "impliedly overruled" by *Wells v. Dairyland Mut. Ins. Co.* The appellant argues that the bar could not reasonably have been expected to understand that the *Wells Case* applied to the granting of a directed verdict. We find no merit in this contention. A fair reading of *Wells v. Dairyland Mut. Ins. Co.* requires the conclusion that *Plankinton v. Gorman, supra,* would not be followed; careful practice on the part of counsel would have prompted the bringing of a timely motion for a new trial before the trial court.

However, while Mr. Gilson is not entitled as a matter of right to review in this court of the order directing the verdict against him, we conclude that we should exercise the authority given to us by sec. 251.09, Stats.; this authorizes the supreme court in its discretion to grant a new trial whenever it is deemed that there has been a miscarriage of justice. For the reasons set forth in this opinion, we consider that the learned trial court erred in directing a verdict against Mr. Gilson, and notwithstanding the appellant's failure to comply with *Wells v. Dairyland Mut. Ins. Co.* we will order a new trial in the interests of justice.

*By the Court.*—Judgment reversed; cause remanded for a new trial.