SCHUSTER, Appellant, v. ST. VINCENT HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS SISTERS, Respondent.

*No. 137.  Argued October 29, 1969.—Decided December 2, 1969.*
(Also reported in 172 N. W. 2d 421.)

For the appellant there was a brief by *Berk & Pressentin* of Green Bay, and oral argument by *Bernard Berk.*

For the respondent there was a brief by *Davis, Soquet & Cherney,* and oral argument by *David J. Condon,* all of Green Bay.

HEFFERNAN, J. The appellant's basic contention, and upon the determination of which must hinge our decision of the case, is that the duty of a hospital toward a patient in respect to the custodial care given him is a duty higher than that of *ordinary* care. This higher duty, he argues, should be expressed as a duty of *reasonable* care. The trial judge concurred in plaintiff's reasoning, but denied plaintiff's motions on the ground that his instructions to the jury had made that distinction clear— that the jury was charged with assessing the hospital's negligence in terms of that higher duty; but on that basis it nevertheless assessed the negligence at 20 percent.

The instructions of the trial judge insofar as they are pertinent provided:

"You are further instructed that the defendant, St. Vincent Hospital, had the duty to exercise such reasonable care and attention for the safety of the plaintiff, Milton Schuster, as his condition, both physical and mental, may have required. This includes the duty to exercise reasonable care to design, construct, equip and maintain the bathing facilities for Mr. Schuster in a reasonably safe condition for the intended use of such facilities, and for his protection and safety as his condition, both physical and mental, may have required. A hospital is under a duty to exercise reasonable care in the selection and maintenance of equipment and facilities furnished for the use of patients. In considering your answer to this First Question you will take into consideration the construction of the bathing facilities in Room 1009, the equipment furnished in such bathing

facilities, whether or not safety devices and safeguards were furnished, and if they were, whether such were reasonably adequate, and all other facts and circumstances disclosed by the evidence.

"You are further instructed, in connection with this First Question, that the defendant-hospital was not required to guarantee the absolute safety of Mr. Schuster but only owed to him the duty, as a patient, to exercise such reasonable care in looking after and protecting him as his condition, both physical and mental, may have required."

The instruction in regard to Schuster's contributory negligence was framed thus:

". . . you are instructed that Mr. Schuster had a duty to use ordinary care for his own safety and protection . . . ."

The duty of the plaintiff in regard to contributory negligence is, of course, conceded by all parties. The issue arises only on the instructions in regard to the hospital.

The defendant hospital contends that the duty imposed upon the hospital in regard to its nontreatment care of the patient is simply one of ordinary care, and that, irrespective of the judge's acceptance of plaintiff's theory of a higher duty, the instruction that the duty was "reasonable" care was in fact synonymous with ordinary care, and was, therefore, correct.

We totally agree with respondent's position. The duty of a hospital in regard to its housekeeping or custodial functions toward a patient is simply one of ordinary care under the circumstances. In *Puls v. St. Vincent Hospital* (1967), 36 Wis. 2d 679, 689, 154 N. W. 2d 308, we approved instructions of the trial court which advised the jury that the hospital's duty in regard to the physical and mental condition of a patient was one of reasonable care.

There is no intimation therein, however, that we intended the approval of a standard higher than that of ordinary care, and at no time in that case was it contended that the duty under the instructions was considered to be a higher duty than that of ordinary care.

The duty of ordinary care and the duty of reasonable care are in our opinion identical. The duty of ordinary care is simply that of the "reasonable man" under the circumstances. It is synonymous with the exercise of reasonable care. In Wisconsin the classic statement of negligence in terms of ordinary care is expressed in *Osborne v. Montgomery* (1931), 203 Wis. 223, 242, 243, 234 N. W. 372:

"Every person is negligent when, without intending to do any wrong, he does such an act or omits to take such a precaution that under the circumstances present he, as an ordinarily prudent person, ought reasonably to foresee that he will thereby expose the interests of another to an unreasonable risk of harm. In determining whether his conduct will subject the interests of another to an unreasonable risk of harm, a person is required to take into account such of the surrounding circumstances as would be taken into account by a reasonably prudent person and possess such knowledge as is possessed by an ordinarily reasonable person and to use such judgment and discretion as is exercised by persons of reasonable intelligence and judgment under the same or similar circumstances."

It should be noted that *Osborne v. Montgomery* uses the test of "reasonableness" in regard to foreseeing the possible harm and the possible risk. The test of ordinary care under that case is clearly one of reasonable care or the standard of conduct of the reasonable man under the circumstances.

It should also be pointed out that *Osborne* does not make resort to semantic fetishism in insisting that "ordinary care" is the only term that is descriptive of

the standard of conduct. As Mr. Chief Justice ROSEN-
BERRY said in that case, "No form of statement is sacro-
sanct. It is the idea that is essential." (p. 233.)

Bouvier's Law Dictionary defines "reasonable care"
as "That care and foresight which men of ordinary pru-
dence are accustomed to employ . . . It is synonymous
with ordinary care."

Corpus Juris Secundum summarizes the uniform tenor
of holdings throughout the United States:

". . . the usual test of the duty of one person toward
another or the property of the latter is ordinary care,
or as it is sometimes termed, 'reasonable care' . . . .
"These expressions are usually regarded as having the
same significance and are used interchangeably . . . ."
65 C. J. S., *Negligence,* pp. 567, 568, sec. 11 (1).

The instruction as given was proper, although, for the
sake of consistency, the preferred instruction should em-
body the concept of duty framed in terms of ordinary
care.

We accordingly conclude, although plaintiff felt the
instruction did not properly embody the higher duty he
thought applicable, and the trial judge believed that it
did, that the instruction as given stated the proper
standard of care, *i.e.,* ordinary care or in this case its
equivalent, reasonable care.

It should be noted, moreover, that we can perceive
no prejudice to the plaintiff as the result of the in-
struction given. While optimally the duty of both plain-
tiff and defendant ought to have been phrased as being
that of ordinary care, the jury could not have con-
cluded that the hospital's duty was a lesser degree of care
than that required by law.

In actions against a hospital for negligent conduct that
does not amount to malpractice, the standard of conduct
is ordinary care, the compliance or breach of which can
be determined by a jury without resort to expert opinion

evidence or to the standards of practice of the community.

Although plaintiff urges for the first time on appeal that we adopt a higher standard—one of "corporate responsibility"—to be applicable to a hospital in its custodial functions, we do not find plaintiff's arguments persuasive and are convinced that the public policy factors governing negligence actions will best be served by requiring the standard of ordinary care.

It should be noted that at one point plaintiff asked for an instruction pointing out the hospital's duty under the safe-place statute, sec. 101.01 (11), Stats. However, at oral argument plaintiff's counsel specifically waived any claim that a safe-place instruction should have been given. We thus are not obliged herein to approach the question. In passing, we note the following Wisconsin cases that are instructive on the point. *Wright v. St. Mary's Hospital of Franciscan Sisters* (1953), 265 Wis. 502, 61 N. W. 2d 900; *Grabinski v. St. Francis Hospital* (1954), 266 Wis. 339, 63 N. W. 2d 693; *Watry v. Carmelite Sisters* (1957), 274 Wis. 415, 80 N. W. 2d 397.

*Was jury's assessment of negligence*
*supported by the evidence*

There was evidence from which the jury could conclude that the plaintiff was negligent. He took his shower in a bathtub knowing that the curved surface of the tub would be slippery and hazardous unless a nonskid bath mat was used. He had earlier in the day taken a shower and knew that no bath mat had been furnished. He nevertheless, knowing the potential hazard, did not attempt to have the hospital supply the bath mat or attempt to use a towel on the floor of the tub. He turned to rinse while he was covered with soap, without holding onto the soap dish handgrip (which,

admittedly, was at a level lower than could be used conveniently when standing in the shower).

On the other hand, there was evidence from which a jury could conclude that the shower-tub combination was hazardous, that the hospital had failed to inform the plaintiff of such hazard and had failed to supply a bath mat or other nonskid devices for the floor of the tub. In addition, no grab bars had been placed at a height convenient to a patient who was taking a shower.

It is clear that there was credible evidence to support a finding of negligence in respect to the plaintiff, Schuster, and in respect to the defendant, hospital. A jury's finding of negligence and the apportionment of that negligence will not be set aside when there is any credible evidence that under any reasonable view supports the verdict. *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. 2d 286, 290, 128 N. W. 2d 400.

In *Severson v. Beloit* (1969), 42 Wis. 2d 559, 565, 167 N. W. 2d 258, the standards for appellate review of a jury's negligence verdict were reviewed:

"This court has uniformly held that the verdict of a jury will be sustained if there is any credible evidence which under a reasonable view will sustain it. *Kinsman v. Panek* (1968), 40 Wis. 2d 408, 162 N. W. 2d 27. In *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 151 N. W. 2d 706, this court concluded that a verdict would be set aside only if at least one of the three following factors appeared: (1) If, as a matter of law, the plaintiff's negligence equaled or exceeded that of the defendant; (2) if the percentages attributed to the parties are grossly disproportionate; or (3) if there was such failure of proof that the verdict was based upon speculation."

Applying these standards, it seems clear that the verdict cannot be set aside. Although the preference of the writer of this opinion would be to assess the negligence of the hospital at more than 20 percent, the evidence does not lead to the clear conclusion that the negligence of the defendant was, as a matter of law, greater than that of the plaintiff. We cannot, therefore, order a new

trial on the basis of a patently erroneous apportionment of negligence.

Since post-trial motions were not directed to the inadequacy of damages, the plaintiff cannot as a matter of right question the damage award on this appeal. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380.

However, the issue is raised here collaterally as probative of the jury's prejudice—the argument of plaintiff being, apparently, that the damages were so low as to be unreasonable and, hence, are probative of the jury's prejudiced apportionment of negligence. Suffice it to say that we see no evidence that the damages were inadequate. There was evidence of severe arthritis not associated with the hospital injury. There was evidence of symptoms before the accident that were indicative of imminent disability. Even plaintiff's own witness did not testify that all of his disability was attributable to the hospital accident. Although the sum of $4,500 is indeed modest if we assume that his disability resulted solely from the bathtub fall, the state of the evidence clearly points to other and unrelated causes for a portion of the disability. There was evidence of earlier back trouble and of subsequent neurological problems that, although to some degree disabling, were not associated with the fall. Under this state of the record, we cannot conclude that the jury's award so failed to compensate the plaintiff for his injuries as to be shockingly low or probative of the jury's prejudice in regard to their answers to the negligence questions.

Plaintiff also claims he was prejudiced by the testimony of Sister Renelle, who stated that the function of the Franciscan order was to care for the sick and the poor, both in several states of the United States and abroad. While it would appear that there is some force to plaintiff's arguments that as a consequence of this statement a jury would be loath to pin negligence upon a far-flung charitable organization whose purpose was

so worthy, on the other hand, Judge GLEASON stated that the statement might be more prejudicial to the defendant than the plaintiff, since such testimony could give the impression of substantial financial resources.

Other bits of evidence were admitted that plaintiff claims were prejudicial, *e.g.*, the sister superior was permitted to testify that bathtub-shower combinations were in use in at least one other hospital of the order. This, of course, was in rebuttal to plaintiff's testimony that such combinations were not in accordance with proper standards of hospital safety. It is difficult to conclude that the error, if any, was prejudicial to the plaintiff. There is nothing in the record to show that defendant asserted that the combination tub-shower accorded with accepted safety standards. Rather, it would appear that the defendant was in danger of having its testimony construed as evidence of "customary negligence." In any event, it does not appear that the evidence of which plaintiff complains was of such magnitude that a different result probably would have ensued if it had been excluded. *Savina v. Wisconsin Gas Co.* (1967), 36 Wis. 2d 694, 704, 154 N. W. 2d 237.

The trial judge also pointed out, correctly our examination of the record reveals, that much of the information in regard to the Franciscan order—its purpose and scope of operations—that plaintiff claims is prejudicial when elicited in response to defendant's questions, was in substance put into evidence by defendant's adverse questioning of defendant's employees at trial.

We are satisfied that the case was fully tried, that the evidence was sufficient to support the jury's verdict, and that the trial was free of any evidence of significant error or prejudice. Under these circumstances, we see no grounds for reversal because of error or in the interest of justice.

*By the Court.*—Judgment affirmed.