EDEN (Venance W.), Appellant, v. LA CROSSE LUTHERAN HOSPITAL, Respondent. [Case No. 206.] *
EDEN (Lillian), Appellant, v. LA CROSSE LUTHERAN HOSPITAL, Respondent. [Case No. 207.] *

*Nos. 206, 207. Argued November 2, 1971.—Decided November 30, 1971.*
(Also reported in 191 N. W. 2d 715.)

---

* Motion for rehearing denied, with costs, on February 1, 1972.

188

For the appellants there were briefs by *Arthur E. Sheridan* of Waukon, Iowa, and *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *William P. Skemp*.

For the respondent there was a brief by *Johns, Flaherty, Harman & Gillette* of La Crosse, and oral argument by *Daniel T. Flaherty*.

HEFFERNAN, J.   We conclude that the trial judge properly directed the verdict.   The appellants, relying principally upon this court's decision in *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 698, 699, 151 N. W. 2d 741, correctly stated the circumstances under which a trial judge should direct a verdict:

"A case should be taken from the jury and a verdict directed against a party:
" '. . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion.' [cases cited] . . .
"In determining whether or not the trial court was in error in failing to direct the verdict, this court must take that view of the evidence which is most favorable to the party . . . against whom the verdict was sought to be directed. . . . If there is any evidence other than mere conjecture or incredible evidence to support a contrary verdict, the case must go to the jury. . . . [case cited]."

The plaintiffs argue that an issue of fact for the jury was raised as a result of the disputed testimony in regard to whether there was a footstool at the side of Lillian Eden's bed. Although the hospital record showed that Lillian Eden stated shortly after the accident that she had slipped from the footstool, at trial she was unequivocal that there was no footstool in her room. Her husband testified that he could not state whether there was a footstool. The testimony of the hospital personnel tended to indicate that there was a footstool in the room. No doubt a factual issue was raised in this respect. The trial judge in his opinion on motions after verdict stated:

"There was serious dispute between the parties as to whether or not Mrs. Eden's room was provided with a footstool, but the court feels this is not crucial to the decision here, and that the failure of the hospital to

provide, if it did so fail under the circumstances, was not negligence and certainly was not causal."

Thus, the trial judge in his opinion pointed out *arguendo* that, even if the plaintiffs' position was correct and there was no footstool in the room, nevertheless, as a matter of law under these circumstances, the failure to provide a footstool was not negligence. In short, he concluded that the presence or absence of a footstool was immaterial under the facts and circumstances of this case. Not every disputed fact in a lawsuit must be resolved by a jury. Only the facts that are material and, if proved one way or the other, are determinative or tend to be determinative of the issue need be submitted to the jury. We repeat what we stated in *Miglautsch, supra:*

"A case should be taken from the jury and a verdict directed against a party . . . only when the evidence gives rise to no dispute as to the *material* issues . . . ." (Emphasis supplied.)

We conclude that the trial judge correctly concluded that whether or not Lillian Eden's room was provided with a footstool was not "crucial." It was a dispute about an immaterial fact.

The duty of care owed a patient by a hospital was discussed by this court in two recent cases. *Schuster v. St. Vincent Hospital* (1969), 45 Wis. 2d 135, 172 N. W. 2d 421; *Cramer v. Theda Clark Memorial Hospital* (1969), 45 Wis. 2d 147, 172 N. W. 2d 427. We pointed out in *Schuster* that the duty was one of ordinary care under the circumstances. In *Cramer* we explicated the standard of ordinary care required of a hospital in respect to its duty toward its patients. We said at page 149:

"The general rule is that a hospital must in the care of its patients exercise such ordinary care and attention

for their safety as their mental and physical condition, known or should have been known, may require."

The facts are undisputed that Lillian Eden was not a sick woman. She could have returned home, and she remained in the hospital only for the purpose of prescribing an optimum diet. There are no facts of record to indicate that the hospital or its agents, acting as an ordinarily prudent person, ought reasonably to have foreseen that the failure to provide a footstool would expose a patient in the circumstances of Lillian Eden to an unreasonable risk of harm. She had not complained about the absence of a footstool. She got out of the bed on numerous occasions without needing it, and she stated that she could get into bed without any difficulty.

Under these circumstances it was clear as a matter of law that an ordinarily prudent person could not reasonably foresee that Lillian Eden would be exposed to an unreasonable risk of harm because there was no footstool. Her status in the hospital at the time the injury occurred was not that of a patient receiving treatment or medication which in any way impaired her ability to take care of herself or which imposed any special duty on the hospital. It is apparent that the trial judge properly ruled that under these circumstances the argued absence of a footstool was not material to determining the question of negligence.

The plaintiffs' counsel argues on this appeal that consideration should be given to special circumstances that arose when, as he states in his brief:

"Before retiring on the evening before the accident, she was given sedatives and pills which had a cathartic effect. The sedatives made her sleep soundly until the early morning hours, when she suddenly awoke from her sedative produced sleep, with a strong urge to go to the bathroom. While attempting to remove herself from the bed, she fell forward, striking the floor in such a manner as to fracture her left femoral hip."

Were these facts true, there would be arguable merit to the plaintiffs' claim, but they are unsupported by the evidence. The administration of the pills and sedative referred to took place not on the evening before the accident but a day earlier, thirty hours prior to the accident. We are concerned that counsel has predicated his argument on facts not appearing of record and which would tend to mislead the court. The accident did not take place at a time when it was reasonably foreseeable that any special precautions would have been required in the exercise of ordinary care following the administration of the medicines. It should also be pointed out again that Lillian Eden was not administered a cathartic.

While the bed was undisputably at a height of 36 inches, there was no reason to believe, under the circumstances, that Lillian Eden was reasonably likely to fall from the bed and sustain injury. She got in and out of bed on the way to the bathroom several times without any manifested difficulty. No conduct of hers could reasonably have led the hospital to anticipate that she would have any difficulty whatsoever in getting out of bed.

Neither was the absence of bedrails evidence of negligence. We stated in *Carson v. Beloit* (1966), 32 Wis. 2d 282, 288, 145 N. W. 2d 112:

"Bedrails are used to keep patients from falling out of bed. The ones used on Carson's bed would not have prevented him from getting out of bed. This is not a case of a patient who falls out of bed but one who deliberately gets out of bed."

In concluding that the verdict was properly directed against the plaintiffs, we have considered the evidence most favorably from the viewpoint of the plaintiffs, the parties ruled against. *Jacobson v. Greyhound Corp.* (1965), 29 Wis. 2d 55, 138 N. W. 2d 133. We are

satisfied from a perusal of the trial judge's opinion that he did so also.

*By the Court.*—Judgments affirmed.