PAYNE, Individually and as Special Administrator of the Estate of Gladys B. Payne, Respondent, v. MILWAUKEE SANITARIUM FOUNDATION, INC., d/b/a Milwaukee Sanitarium Foundation and Milwaukee Psychiatric Hospital, Appellant.

*No. 75-405. Argued November 1, 1977.—Decided December 13, 1977.*

(Also reported in 260 N.W.2d 386.)

For the appellant there was a brief by *Robert C. Watson* and *Arnold, Murray & O'Neill,* with oral argument by *Mr. Watson,* all of Milwaukee.

For the respondent there was a brief by *Stewart G. Honeck, Roy W. Arndt* and *Michael E. McMorrow,* with oral argument by *Mr. Honeck,* all of Milwaukee.

ROBERT W. HANSEN, J. It was not too long ago that hospitals for the mentally ill were known as asylums for the insane. Emphasis was upon the custodial aspect of the institutionalization—barred windows, locked doors, straitjackets and physical restraint to prevent inmates from harming themselves or others.

Today, with more known about the cause and cure of mental illness, the mental hospital has become primarily a treatment facility. While maximum security units are retained, the primary emphasis is now upon therapy and rehabilitation. An attending psychiatrist's order that a particular patient be assigned to an open or closed unit represents a balance of both protection and treatment.

When Gladys Payne came to the Milwaukee Psychiatric Hospital, she brought with her a long history of depression, including at least one suicide attempt. Despite this history the psychiatrist assigned to her at the hospital ordered her placed in Sleyster Hall, an entirely open facility where she would be permitted to light her own cigarettes, walk around the grounds unattended, and certainly go to the bathroom without someone going with her. The aim of the treatment, Dr. Hansen testified, was "to balance safeguarding her person against such a restrictive ever-watchful hovering approach that she would lose all initiative and feel lost."

Dr. Hansen testified that the patient's condition appeared to improve somewhat during her stay in Sleyster Hall. However, when she was observed standing before an open window contemplating suicide, Dr. Hansen re-

evaluated her therapy and ordered her transferred to the maximum security unit. There she was under constant surveillance. She could not leave the locked ward, and she was not permitted to light her own cigarettes. In this restrictive environment her condition deteriorated. Her family testifed that she became even more depressed and withdrawn. Once again, balancing the two aims of protection and rehabilitation, Dr. Hansen transferred her to a less restrictive unit where she could light her own cigarettes and, if the doctor so authorized, could move about the hospital grounds unattended.

Dr. Hansen knew that on Kradwell 3 Mrs. Payne would be permitted to have matches and to light her own cigarettes. He made no orders to the contrary. Instead, his effort to balance therapy with protection took the form of special orders with respect to her freedom of movement. To begin with he ordered her to be accompanied when she left the hospital building to walk around the grounds. Later he amended that order to permit this patient to walk the grounds unattended, and to be given passes for visits to relatives. Still later the psychiatrist directed that she be accompanied when she left the ward. Finally, even after an incident in which she tried to jump out of a car on her way back to the hospital, he permitted her to be unattended about the hospital and grounds.

The nonsuits granted by the trial court with respect to Drs. Hansen and Josephson are not challenged on this appeal. Therefore, the negligence of Drs. Josephson and Hansen in permitting known suicidal patients to have matches or in assigning Mrs. Payne to Kradwell 3, where they knew she could have matches, or in failing to make orders to insure more careful supervision, is not before the court on appeal. What is before us on this appeal is the denial of defendant hospital's motion for nonsuit and the sufficiency of the evidence to support a verdict

finding the hospital, through its attendants on Kradwell 3, causally negligent. This, however, brings us to the issue of whether the supervision given by the hospital staff to this patient, including the freedom to go to the washroom unattended, are matters requiring expert testimony to establish negligence.

The duty of care owed a patient by a hospital in this state is one of ordinary care under the circumstances.[1] However, in applying this standard, there is to be recognized a distinction between medical care and custodial or routine hospital care.[2] Where the patient requires professional nursing or professional hospital care, then expert testimony as to the standard of that type of care is necessary.[3] However, the standard of nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony.[4] The issue, then, is whether the negligence alleged in this complaint "must, like in malpractice cases, be proved by expert testimony."[5] As to the treating psychiatrist, the clinical director and the staffing corporation, the trial court held that expert testimony as to standard of care was required. We would not quarrel with that finding if it were before us for review. But we fail to see why the

---

[1] *Eden v. La Crosse Lutheran Hospital,* 53 Wis.2d 186, 192, 193, 191 N.W.2d 715 (1971), citing *Schuster v. St. Vincent Hospital,* 45 Wis.2d 135, 172 N.W.2d 421 (1969), and quoting the following language of *Cramer v. Theda Clark Memorial Hospital,* 45 Wis.2d 147, 149, 172 N.W.2d 427: "The general rule is that a hospital must in the care of its patients exercise such ordinary care and attention for their safety as their mental and physical condition, known or should have been known, may require." *See also: Dahlberg v. Jones,* 232 Wis. 6, 11, 285 N.W. 841 (1939).

[2] *Cramer v. Theda Clark Memorial Hospital, supra,* n. 1, at 149.

[3] *Id.* at 149.

[4] *Id.* at 150.

[5] *Id.* at 149.

same conclusion is not required as to the identical claims of negligence made against the hospital.

Dr. Josephson, the clinical director, testified: "The policy at the hospital was that patients could possess matches and smoking material except in Kradwell 2–B which was the maximum security unit and the admissions unit *unless a doctor's order indicated otherwise.*" [Emphasis supplied.] Dr. Hansen transferred Mrs. Payne from the maximum security unit to the Kradwell 3 unit where he knew she could have smoking materials, and he gave no orders limiting her access to smoking materials. Her assignment to Kradwell 3 and his subsequent order that she be permitted to go unattended about the institution were medical judgments on his part as to the proper balance of freedom and confinement most likely to be therapeutic for Gladys Payne. In an offer of proof rejected by the trial court Dr. Hansen testified that supervision of Mrs. Payne should avoid an "ever-watchful hovering approach" that would make her "lose all initiative and feel lost."[6] That medical judgment and a claim of negligence based upon it must be established by expert testimony, whether the claim is directed to the treating psychiatrist or to the hospital that carried out this directive.

The evidence shows that in permitting Mrs. Payne to take her coffee with her to the bathroom unattended on April 1, 1970, the two attendants on duty were super-

---

[6] The plaintiff challenges the adequacy of the hospital's offer of proof. However, when the offer of proof is considered in the context of the testimony of Dr. Hansen before the jury, stricken by the trial court, that precipitated the offer and immediately preceded it on the record, it supplied a meaningful basis for the trial court's ruling and for this court's review. *State ex rel. Schlehlein v. Duris,* 54 Wis.2d 34, 39, 194 N.W.2d 613 (1972).

vising Mrs. Payne in conformity with the most recent order of the treating psychiatrist that the patient be permitted to leave the unit unattended and unaccompanied. Without question this order of March 30, 1970, contemplated that Mrs. Payne could go to the bathroom and remain there for ten minutes without someone going along to observe her. Where an attending psychiatrist specifically ordered a suicidal patient to be unattended, an eastern court held that, in the absence of some notice to the staff that a suicide attempt was imminent, the hospital, as a matter of law, was not negligent if the patient used this freedom to leave the ward and harm himself.[7] In that case the court held: "It was not incumbent upon the [hospital staff] to apply restraints or supervision which the attending physician did not desire, at least in the absence of anything to indicate a change in the patient's condition."[8] That is sound law. The hospital staff, here the nurse and psychiatric aide, are not to be faulted for following the specific orders of the treating psychiatrist as to extent or degree of supervision, at least not in the absence of any unusual behavior on the part of Mrs. Payne to give them reason to depart from those orders.

This is not to say that the nursing and custodial staff has no further duty of care beyond following the doctor's orders. The situation would be different if, following an order permitting the patient to be able to leave the ward unit unattended, her behavior would have nonetheless alerted a reasonable person to the need for stricter supervision. Thus where immediately prior to an attempted suicide the patient had spent a sleepless night, exhibited bizarre behavior, including delusions, and had repeatedly stated that she must leave the hospital and would not obey the nurse's orders, a federal court upheld a verdict

[7] *State v. Washington Sanitarium & Hospital,* 223 Md. 554, 165 A.2d 764 (1960).

[8] *Id.* at 766.

for plaintiff against the hospital, holding that under the special circumstances which arose, the patient should have been placed under constant supervision.[9] That is not the case before us. Here the attending psychiatrist's order giving the patient freedom to move about without supervision was made on March 30, 1970. The evidence was that the following day, March 31, 1970, was for this particular patient a normal and uneventful day, with nothing unusual or alarming about it. On April 1, 1970, Mrs. Payne arose, got herself coffee at the nurse's station, smiled, and said "Good Morning," and took the coffee with her to the bathroom. On this record the patient gave the staff no reason to do other than supervise her in a manner consistent with the doctor's order of March 30, 1970, permitting her to be unattended.

The plaintiff on appeal argues that Mrs. Payne's cheerfulness on the morning she set fire to herself should have triggered stricter supervision by the staff. The difficulty with this contention is that there is no support for it on this record. Dr. Hansen was asked whether "having a very good day" can also indicate a suicide potential and he answered, "Most often improvement means just improvement. Sometimes a *sudden* improvement is a warning that the patient is thinking of suicide." [Emphasis supplied.] That answer is hardly the expert testimony foundation required to establishing that smiling and saying "Good Morning" should have put the nurse or aide on notice that despite the doctor's orders Mrs. Payne should be supervised more closely and checked on in the bathroom.

In establishing the negligence of a hospital the necessity for expert testimony depends upon the type of negligent

---

[9] *Mounds Park Hospital v. Von Eye*, 245 F.2d 756 (8th Cir. 1957), affirming *Von Eye v. Hammes*, 147 F. Supp. 174 (D. C. Minn. 1956).

acts involved.[10] Expert testimony should be adduced concerning those matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study or experience.[11] In some cases the supervision and custodial care of mental patients is a subject within the realm of the ordinary experience of mankind.[12] However, here the supervision ordered by the treating psychiatrist related to therapy as well as security. Any claim of negligence based on the lack of supervision given, whether brought against the attending psychiatrist or the hospital and its staff, requires expert testimony to establish. Because the trial court refused to permit either party to present such expert testimony, we conclude that the issue of the negligence of the hospital has not been fully and fairly tried and requires a new trial with respect to that issue.

*By the Court.*—Judgment reversed and cause remanded with directions for a new trial on the issue of the negligence of the Milwaukee Sanitarium Foundation, Inc.

---

[10] *Cramer v. Theda Clark Memorial Hospital, supra,* n. 1, at 149, 150.

[11] *Id.* at 150, citing *Pollock v. Pollock,* 273 Wis. 233, 246, 77 N.W.2d 485 (1956); *Hamann v. Milwaukee Bridge Co.,* 127 Wis. 550, 565, 106 N.W. 1081 (1906); *Jacobson v. Greyhound Corp.,* 29 Wis.2d 55, 63, 138 N.W.2d 133 (1965).

[12] *Compare: Dahlberg v. Jones, supra,* n. 1; *Torrey v. Riverside Sanitarium,* 163 Wis. 71, 157 N.W. 552 (1916).