Christopher SNYDER individually, and as Special Administrator of the Estate of Wendy Snyder, deceased, Plaintiff-Respondent,

v.

INJURED PATIENTS AND FAMILIES COMPENSATION FUND, Defendant,

WAUKESHA MEMORIAL HOSPITAL, INC. and ABC Insurance Company, Defendants-Appellants.†

Court of Appeals

*No. 2008AP1611. Submitted on briefs March 5, 2009. —Decided May 27, 2009.*

2009 WI App 86

(Also reported in 768 N.W.2d 271.)

† Petition to review dismissed 10/8/09.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Lori Gendelman* and *Jason J. Franckowiak* of *Otjen, Van Ert & Weir, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Merrick R. Domnitz* and *Anthony J. Skemp* of *Domnitz & Skemp, S.C.*, Milwaukee.

Before Brown, C.J., Snyder and Neubauer, JJ.

¶ 1. NEUBAUER, J. Waukesha Memorial Hospital, Inc., (WMH) appeals from a declaratory judgment granted in favor of Christopher Snyder, as special administrator of the estate of his deceased wife, Wendy Snyder. While an inpatient in the hospital's psychiatric unit, Wendy committed suicide with a gun she brought into the hospital following a five-hour unsupervised pass. At issue is whether Snyder's claim that the hospital staff failed to adequately search Wendy upon her return to the inpatient psychiatric unit alleges negligence in the performance of custodial care or medical malpractice, which is governed by Wis. Stat. ch. 655 (2007–08).[1] We affirm the circuit court's order for judgment in favor of Snyder declaring that his claim alleges negligence in the hospital's provision of custodial care, and not in the provision of health care services; therefore Snyder's claims are grounded in ordinary negligence and fall outside the purview of ch. 655.

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

## BACKGROUND

¶ 2.   The relevant facts, as alleged in the pleadings, are as follows. Wendy Snyder was a patient in the locked Behavioral Health Unit of WMH from February 8, 2005, until February 23, 2005. Snyder claims "[t]hat during [that] time ... [WMH] staff was required to conduct and did, in fact, conduct routine searches and possessions checks of any and all patients upon re-entry to the locked Unit in order to remove potentially dangerous items from all patients' bodies, carrying aids, and/or clothing." WMH admits "that searches and checks were conducted" but denied "that those searches and checks did not constitute health care." The WMH staff additionally conducted searches of the patients' rooms.

¶ 3.   On February 22, 2005, Wendy was released from the unit on a five-hour pass. Snyder alleges that, upon her return, the staff failed to conduct a possessions check, or to check Wendy's body, as required by procedure. As a result of the failure to search items brought in by Wendy—a pair of jeans and jacket—Wendy was able to bring a handgun and ammunition into the locked unit. Staff then failed to uncover the handgun and ammunition during required routine room searches which were conducted on February 22, 2005, and February 23, 2005. In the late afternoon of February 23, 2005, Wendy fatally shot herself with the handgun that she brought with her from her February 22 pass.

¶ 4.   On September 25, 2007, Snyder requested a declaratory judgment pursuant to Wis. Stat. § 806.04, that the claims resulting from Wendy's death are governed by Wis. Stat. § 895.04, the wrongful death statute, and not by Wis. Stat. ch. 655, the medical malprac-

tice chapter. Snyder's amended complaint, filed October 5, 2007, additionally alleged the following causes of action: custodial negligence resulting in wrongful death under § 895.04; medical negligence under ch. 655; and punitive damages, but again requested a declaratory judgment that his claims are governed by § 895.04. WMH denied any negligence on the part of the hospital and asserted, in part, that any claim arising out of the acts or omissions of employees of health care providers acting within the scope of their employment and providing health care services are governed by the limits for medical malpractice as expressed in WIS. STAT. § 655.23(4). WMH requested judgment dismissing Snyder's complaint against it.

¶ 5. Following a hearing on May 29, 2008, the circuit court determined that "a proximate cause or a substantial cause in the death of Mrs. Snyder was the failure to exercise ordinary care when she returned from that pass," and held that WIS. STAT. ch. 655 does not apply as to the "custodial" actions of the staff at WMH. The court granted Snyder's motion for declaratory judgment. WMH appeals.

## DISCUSSION

### Standard of Review

¶ 6. The decision to grant or deny declaratory relief falls within the discretion of the circuit court. *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶ 35, 309 Wis. 2d 365, 749 N.W.2d 211. We will not overturn the circuit court's decision absent an erroneous exercise of discretion. *See id.* We will uphold the circuit court's discretionary act if the circuit court "examined the

264

relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* (citation omitted).

■

¶ 7. At issue is whether the WMH employees who failed to adequately search Wendy were providing health care services at the time of the omission or whether "safety checks" are custodial in nature. WMH contends that in reaching its decision, the circuit court erred in its application and interpretation of Wis. Stat. ch. 655, governing medical malpractice actions. *See Finnegan ex rel. Skoglind v. Wisconsin Patients Comp. Fund*, 2003 WI 98, ¶ 22, 263 Wis. 2d 574, 666 N.W.2d 797 (ch. 655 constitutes the exclusive procedure and remedy for medical malpractice in Wisconsin). Statutory construction and the application of a statute to undisputed facts are questions of law. *DOR v. Caterpillar, Inc.*, 2001 WI App 35, ¶ 6, 241 Wis. 2d 282, 625 N.W.2d 338.

### Applicable Law

¶ 8. WMH is a healthcare provider under Wis. Stat. ch. 655, as defined by Wis. Stat. §§ 655.001(8) and 655.002. Pursuant to Wis. Stat. § 655.007, "any patient or the patient's representative having a claim . . . for injury or death on account of malpractice is subject to [ch. 655]." A patient's claims against a health care provider or health care provider employees are subject to ch. 655 if the claim "for damages for bodily injury or death [is] due to acts or omissions of the employee of the health care provider acting within the scope of his or her employment *and providing health care services.*" Wis. Stat. § 655.005 (emphasis added).

¶ 9.   In *McEvoy v. Group Health Cooperative*, 213 Wis. 2d 507, 570 N.W.2d 397 (1997), the supreme court iterated that Wis. Stat. ch. 655 applies only to medical malpractice claims, and provided guidance as to its application. There, the court observed:

> [T]he language of [Wis. Stat.] ch. 655 consistently expresses the legislative intent that the chapter applies only to medical malpractice claims. While "malpractice" is not defined within the statute, the term is traditionally defined as "professional misconduct or unreasonable lack of skill," or "[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession." *See* Black's Law Dictionary 959 (6th ed. 1990).
>
> We conclude that ch. 655 applies only to negligent medical acts or decisions made in the course of rendering professional medical care.

*McEvoy*, 213 Wis. 2d at 530. Thus, at issue is whether the hospital search was a medical act involving the rendering of professional medical care. For the reasons discussed, we conclude that the claimed failure to search alleges ordinary negligence and, therefore, ch. 655 does not apply.

*The Hospital's "Safety Check" Involved Routine or Custodial Care and Not Medical Care Involving the Exercise of Professional Judgment.*

¶ 10.   WMH contends that Snyder's claim involves decisions made in the course of rendering professional medical care or the exercise of professional medical

judgment—a subject that is not within the realm of a juror's knowledge and will require expert medical testimony. We agree with WMH that the case law addressing the need for expert testimony, while not determinative of whether a claim falls under Wis. Stat. ch. 655, provides useful guidance in determining the type of care involved. Namely, the degree of care, skill and judgment required of a health care provider must typically be proved by the testimony of experts in order to determine the standard of care at issue in a medical malpractice claim.[2] By contrast, "[i]n actions against a hospital for negligent conduct that does not amount to malpractice, the standard of conduct is ordinary care, the compliance or breach of which can be determined by a jury without resort to expert opinion evidence or to the standards of practice of the community." *Schuster v. St. Vincent Hosp.*, 45 Wis. 2d 135, 142–43, 172 N.W.2d 421 (1969).

¶ 11. As explained in *Cramer v. Theda Clark Memorial Hospital*, 45 Wis. 2d 147, 149–50, 172 N.W.2d 427 (1969):

> Courts generally make a distinction between medical care and custodial or routine hospital care. The general rule is that a hospital must in the care of its patients exercise such ordinary care and attention for their safety as their mental and physical condition, known or should have been known, may require . . . . If the patient requires professional nursing or professional hospital care, then expert testimony as to the

---

[2] Certain allegations of medical negligence may not require expert testimony. *See* Wis JI—Civil 1024, "Malpractice: Res Ipsa Loquitur," Comment (noting instances where the jury may be permitted to infer negligence on the basis of layperson's knowledge).

standard of that type of care is necessary . . . . But it does not follow that the standard of all care and attention rendered by nurses or by a hospital to its patients necessarily require proof by expert testimony. The standard of nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable-care standard. (Citations omitted.)

Therefore, we bear in mind that ordinary care involves care and attention to the patient's safety rendered by a hospital which is "nonmedical, administrative, ministerial or routine care." *Id.*; *Kujawski v. Arbor View Health Care Ctr.*, 139 Wis. 2d 455, 462–63, 407 N.W.2d 249 (1987).

¶ 12.  Applying this standard in *Cramer*, the court concluded that "allegations concerning negligence in leaving [a patient] unattended and under inadequate restraint . . . are matters of routine care and do not require expert testimony." *Cramer*, 45 Wis. 2d at 153–54. In *Cramer*, a patient recovering from surgery in the intensive care unit was injured after he was left unattended and unrestrained by a nurse who had removed a cloth restraint from his right arm so that he could eat. *Id.* at 148. In determining whether expert testimony was necessary to determine whether the hospital was negligent in leaving the patient unattended, the court concluded that the claim was not one for malpractice—it involved a matter of routine care which did not require expert testimony. *Id.* at 153–54. The court found that the standard of care was not what the practice is in the "hospitals in the area but the ordinary care which the condition of the patient then requires." *Id.* at 154.

¶ 13. The issue of ordinary care was more recently revisited by the court in *Kujawski*. At issue in *Kujawski* was whether expert testimony was necessary to prove the standard of care applicable to a nursing home where the alleged negligence consisted of failing to secure an elderly patient in her wheelchair so as to prevent her from falling. *Kujawski*, 139 Wis. 2d at 458. The elderly patient was confined to a wheelchair or bed and, due to her size, was unable to sit back in a wheelchair. *Id.* at 459–60. The supreme court reversed the decisions of the trial court and court of appeals which had both concluded that expert testimony was necessary to prove the applicable standard of care. *Id.* at 458–59. The supreme court concluded that the determination of whether to use a restraining belt in that case involved a matter of routine care within a jury's common knowledge and, therefore, expert testimony was not necessary. *Id.*

¶ 14. Citing to *Cramer*, the *Kujawski* court observed that "[w]e have previously held that the determination of negligence, where a nurse leaves a patient unattended and under inadequate restraint, involves matters of routine care and does not require expert testimony." *Kujawski*, 139 Wis. 2d at 463 (citing *Cramer*, 45 Wis. 2d at 153–54). Thus despite the patients' presence in health care facilities and an alleged failure in care provided by medical personnel, the courts concluded that the negligence claims in both *Cramer* and *Kujawski* involved routine care. Snyder contends that, like the use of restraints, conducting a "safety check," or search, of a patient entering the inpatient psychiatric facility was a routine procedure at WMH and is "not at all outside the realm of ordinary and lay comprehension." We agree. Like the narrow issue in *Cramer* regarding the appropriateness of removing a patient's restraints and leaving

269

him unattended, Snyder alleges a narrow claim of negligence in the performance of the hospital psychiatric unit's practice—the search of a patient returning from a pass. The question is whether the performance of that practice was a medical act involving the exercise of professional medical judgment. We conclude that it was not. The standard of care is not what the practice is in the hospitals in the area but the ordinary care which the condition of the patient then requires.[3]

¶ 15. In an effort to distinguish *Cramer* and *Kujawski*, WMH relies heavily on the supreme court's decision in *Payne v. Milwaukee Sanitarium Foundation, Inc.*, 81 Wis. 2d 264, 260 N.W.2d 386 (1977), in arguing that "the 'treatment' of a psychiatric patient in a modern mental health facility encompasses both bodily protection and therapy." WMH additionally alleges that the exercise of professional medical judgment that is implicated by Snyder's claims places the action "squarely within the ambit" of WIS. STAT. ch. 655. We disagree.

¶ 16. As in this case, *Payne* involved a patient receiving inpatient psychiatric treatment who harmed herself while in the care of the hospital. *Payne*, 81 Wis. 2d at 266. However, the patient in *Payne* was permitted by her physician to have access to matches in

---

[3] WMH argues that expert testimony will be required to establish the extent and frequency of searches depending on the facility and the patient, as well as the standard of care as to the utilization of searches. However, in its answer, WMH did not deny Snyder's allegation that the hospital staff was required to conduct and did, in fact, conduct routine searches of all patients upon re-entry to the locked unit. One does not need an expert to determine whether a person re-entering the unit should be searched pursuant to a hospital procedure.

order to light her own cigarettes. *Id.* at 267, 271. She later used the matches to light herself on fire, resulting in serious injury. *Id.* at 268. The patient's husband sued the hospital and the physician alleging negligence in permitting the patient to have access to matches and in failing to supervise her in light of her access to a "dangerous instrumentality." *Id.* The issue on appeal was whether the supervision given by the hospital staff to the patient, including the freedom to go to the washroom unattended, was a matter requiring expert testimony to establish negligence. *Id.* at 272.

¶ 17. The hospital sought to introduce testimony of the treating physician that the patient's condition had deteriorated when under maximum security and, therefore, he had placed her on a less restricted unit where the supervision would avoid an "ever-watchful hovering approach" that would cause the patient to "lose all initiative and feel lost." *Id.* at 270, 273. Because the supervision ordered by the treating psychiatrist related to therapy as well as security, the *Payne* court concluded that expert testimony was required. *Id.* at 276.

¶ 18. The *Kujawski* court's discussion of *Payne* illustrates the distinction between treatment and routine care.

> In *Payne*, a patient with a long history of depression including at least one suicide attempt, was placed in an open unit at the Milwaukee Psychiatric Hospital. In concluding that expert testimony was necessary to prove negligence, we held that the determination of whether to allow a suicidal patient to have access to matches involved a medical decision as to the proper balance of freedom and confinement likely to be therapeutic to the patient. Thus, because the decision to leave the patient unattended was a matter of therapy, it involved a medical decision requiring expert testimony. In this case, however, the decision to leave [a nursing

home patient] unrestrained [in a wheelchair] does not involve a matter of therapy and, therefore, does not constitute a medical decision requiring expert testimony.

*Kujawski,* 139 Wis. 2d at 468. As in *Kujawski,* the negligent conduct in *Payne* is readily distinguished from the alleged negligent conduct in this case.

¶ 19.  In *Payne,* the physician made the decision to allow the patient to have access to matches as part of a balancing between therapy and protection. In order to compensate for that additional freedom, the physician issued special orders with respect to her freedom of movement. *Payne,* 81 Wis. 2d at 271. Here, in contrast to the medical decisions and doctor's orders at issue in *Payne,* Snyder's claim of negligence is based solely on the failure of the hospital to adequately search Wendy pursuant to hospital procedure. The hospital staff's search was not the result of special orders involving Wendy nor did it involve the exercise of professional medical judgment.[4] Rather, plaintiff alleges the search

---

[4] WMH attempts to broaden the analysis by arguing that the jury will need to consider the appropriateness of the care and medical decisions that were made by the hospital staff in the days and hours leading up to February 23, 2005—i.e., treatment milieu, medication regime, and treatment modalities. However, Snyder's complaint does not allege negligence in the provision of Wendy's medical care or challenge those medical decisions. Rather, Snyder's claim is based solely on the failure to search. The touchstone of the analysis is whether the plaintiff's *claim* is one of medical malpractice. *See* WIS. STAT. § 655.007. Thus our analysis must focus on whether Snyder's complaint alleges a claim for ordinary negligence or medical malpractice.

For this reason, we also reject WMH's argument that an investigation report issued by the Department of Health and Family Services (DHFS) following Wendy's death serves to

of a patient entering an inpatient facility was to be conducted as a matter of providing routine care to all of the patients. There was nothing particular about Wendy or the medical care provided to her that would have changed the application of that custodial duty. The alleged routine patient search—like the use of restraints in *Kujawski* and *Cramer*—was a matter of routine care. While the decision to place Wendy on the unit involved medical decisions made in the course of rendering professional medical care, the search itself, upon which the plaintiff's claim is solely based, was a matter of custodial care. As with searches at airports and courthouses, the alleged routine search is not a medical act—it is not a health care service, nor does it involve the exercise of professional medical judgment.

## CONCLUSION

¶ 20. We conclude that the WMH staff's alleged failure to conduct a routine search of Wendy upon her return to the locked inpatient facility alleges negligence

---

broaden the issues on appeal. The DHFS report lists numerous citations, including the failure of nursing staff to properly "train all non-licensed staff on the locked behavioral health unit to conduct consistent safety checks on patients returning from pass." WMH argues that the citations "underscore[] that the circumstances surrounding the death of Wendy Snyder on the inpatient psychiatric unit at [WMH] potentially implicate much broader considerations than the alleged failure of the hospital staff to perform a 'custodial security check' upon Wendy Snyder when she returned home from her therapeutic pass." WMH also raises concerns that Snyder will attempt to raise the DHFS report at trial, thereby bringing potential issues of medical malpractice before the jury. However, Snyder's negligence claim is based on the narrow issue of the failure to search and contains no allegation that the violations or deficiencies cited by DHFS were a substantial cause of Wendy's death.

in the provision of custodial care. We therefore affirm the trial court's grant of a declaratory judgment that the plaintiff's claim falls outside the application of WIS. STAT. ch. 655.

*By the Court.*—Order affirmed and cause remanded.