In the

# United States Court of Appeals
## for the Seventh Circuit

No. 21-1967

MEGHAN FAXEL and MIKE FAXEL,

*Plaintiffs-Appellants*,

*v.*

WILDERNESS HOTEL & RESORT, INC.,

*Defendant/*
*Third-Party Plaintiff-Appellee*,

*v.*

PROSLIDE TECHNOLOGY, INC.,

*Third-Party Defendant*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 19-cv-1026-slc — **Stephen L. Crocker**, *Magistrate Judge*.

ARGUED OCTOBER 25, 2022 — DECIDED AUGUST 15, 2024

Before SYKES, *Chief Judge*, and FLAUM and LEE, *Circuit Judges*.

SYKES, *Chief Judge.* Meghan Faxel was injured while riding an inflatable tube down the "Black Hole," a water slide at the Wilderness Hotel in Wisconsin Dells, Wisconsin. Her tube became stuck and then flipped over, and she injured her shoulder. Meghan and her husband, Mike Faxel, sued Wilderness alleging claims for negligence, common-law premises liability, and loss of consortium. Wilderness later filed a cross-claim against ProSlide Technology, Inc., the manufacturer of the slide, seeking contribution if found liable.

The scheduling order set a deadline for the Faxels to disclose their liability expert, but the date came and went with no disclosure. Almost three months later, they sought an extension of time to name an expert. A magistrate judge, presiding by consent, denied the motion. Wilderness then moved for summary judgment, arguing that without expert testimony, the Faxels could not prove their claims. The magistrate judge agreed and entered judgment for Wilderness.

We affirm. The hotel's duty of care depends on what is reasonably required of water-park operators regarding the safety protocols, inspection, and maintenance of water slides like this one. These questions require specialized knowledge and expertise; they are not within the common knowledge of jurors. It follows that without expert testimony, the Faxels cannot prove their claims. Summary judgment for Wilderness was appropriate.

## I. Background

In August 2016 Meghan and Mike Faxel visited the "Wild West" water park at the Wilderness Hotel & Golf Resort, one

of several indoor water parks at the resort's vast recreational complex in Wisconsin Dells. Meghan decided to try a water slide called the "Black Hole," a thrill ride in which the rider sits on an inflatable tube and courses down a covered slide that opens into a large bowl. Churning water then pushes the rider in a circular motion into a final covered slide that corkscrews into the exit pool. Aquatics attendants are positioned at the beginning and end of the ride to assist riders and monitor for safety issues.

Meghan's ride on the Black Hole did not proceed as planned. When she emerged from the first slide into the bowl section of the ride, the force of her descent and the flowing water pushed her tube to the ridge (or side) of the bowl instead of toward the opening to the second slide. Her tube then became stuck in a "dry spot"—not literally a dry spot but an area of the bowl where the water was not circulating with sufficient force to continue pushing her along the route. Her tube flipped over after stalling in this spot for a few seconds, and Meghan sustained serious injury to her collarbone and shoulder. She finished the ride without her tube. When she landed in the exit pool, she told the attendant that she was hurt; the attendant provided first aid, and the park temporarily closed the Black Hole. Later that day an employee did a test ride down the Black Hole. He too experienced a rollover, so Wilderness shut down the ride for the rest of the day and contacted ProSlide, the manufacturer of the slide.

Meghan was not the first rider to get stuck on the Black Hole. Five months earlier on March 26, another rider got stuck in a similar area—between the reverse injector and first forward injector—in the bowl of the Black Hole. After

the March incident, the resort's aquatics director had emailed a video to ProSlide and asked if there were "any adjustments [Wilderness] should make in light of this." A ProSlide employee advised Wilderness that there was "no cause for immediate concern" and encouraged it to continue to monitor the Black Hole for performance issues.

In the months between the March 26 incident and Meghan's accident, Wilderness inspected and monitored the Black Hole in accordance with its standard safety protocols. Every morning aquatics supervisors performed safety inspections of all water slides at the resort. These inspections required a supervisor to check each ride's water flow. In addition, an aquatics staff member conducted a test ride of each water slide before guests arrived. The aquatics supervisors then completed a daily supervisor log confirming that all water slides had been inspected and tested and noting any maintenance issues.

Wilderness located most of its daily safety checklists and supervisor logs completed between March 26 and August 18, the date of Meghan's injury. Based on the park's typical visitor experience, the resort's assistant general manager estimated that "tens of thousands of guests used the Black Hole ride" during this period. Incident reports and other records do not reflect any stuck riders or other water-flow issues. The records reflect one injury during this period: an incident report from May 28 describes an injury on the Black Hole when a guest slid off her tube and hurt her head. But the report does not mention a "dry spot," a stuck tube, or a rollover, and provides no information about the cause of the incident. The August 18 daily safety checklist and supervisor

log do not report any water-flow problems on the Black Hole during that morning's inspection and test ride.

After Meghan's accident, Wilderness and ProSlide inspected and serviced the Black Hole. On the evening of the accident, a Wilderness aquatics manager sent an email to ProSlide explaining that "there was something wrong with the water pressure." In December ProSlide representatives visited Wilderness to evaluate the Black Hole's performance and fix the so-called "dry spot." They adjusted the reverse and forward injectors "to improve the performance inside the bowl feature." In February 2017 they returned to relocate the first forward injector. ProSlide explained that "[i]t was originally reported by the park that riders were becoming stuck in a 'dry spot' between the reverse injector and first forward injector." The relocation of the injector "alleviat[ed] the issue of riders becoming stuck inside the bowl."

The Faxels sued Wilderness in federal court alleging claims for negligence, common-law premises liability, and loss of consortium. They initially filed suit in the Northern District of Illinois. Wilderness moved to dismiss or to transfer the case to the Western District of Wisconsin based on lack of personal jurisdiction in Illinois. The district court agreed that personal jurisdiction was lacking and granted the transfer motion. Once the case arrived in the Wisconsin federal court, the parties consented to proceed before a magistrate judge and filed a joint status report proposing a case schedule and noting that the Faxels planned to file an amended complaint adding ProSlide as a defendant. The magistrate judge held a pretrial conference and entered a scheduling order, which included deadlines to amend the

pleadings, disclose liability experts, complete discovery, and other customary case-management deadlines.

The Faxels missed their deadline to file the anticipated amended complaint. For the next two months Wilderness's counsel repeatedly emailed their attorney inquiring about the status. When an amended complaint was not forthcoming, Wilderness moved to dismiss for failure to prosecute. Two days later the Faxels filed an amended complaint adding ProSlide as a defendant. Though it was more than two months late, the magistrate judge accepted the amended complaint and denied the motion to dismiss. Still, the judge admonished the Faxels' attorney for her "lack of attention to her obligations" and the "troubling lack of candor" in her response to the dismissal motion; the judge warned her that further neglect of her responsibilities would not be tolerated.

For its part, ProSlide moved to dismiss the Faxels' claims against it based on Wisconsin's three-year statute of limitations for personal-injury claims. The judge granted the motion because the allegations in the amended complaint demonstrated that the claims against ProSlide were time-barred.

The Faxels soon missed another important deadline: they did not disclose an expert witness by the deadline in the scheduling order. Nearly three months later, they moved to "reset" the expert disclosure date. The judge denied the motion because the Faxels had not demonstrated good cause under Rule 16 of the Federal Rules of Civil Procedure.

Wilderness then moved for summary judgment, arguing that without a liability expert regarding the standard of care for operators of water parks in general and water slides like

the Black Hole in particular, the Faxels could not meet their burden of proof on any of their claims. The judge agreed and entered summary judgment for Wilderness.

## II. Discussion

The Faxels do not challenge the judge's order dismissing their claims against ProSlide. Nor do they challenge the denial of their motion for an extension of time to disclose an expert witness. Their only argument is that the judge was wrong to enter summary judgment for Wilderness; they maintain that they can prove their claims against the resort even without expert testimony.

We review the judge's summary-judgment order de novo. *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020). Our inquiry centers on the negligence and premises-liability claims. The loss-of-consortium claim is derivative of the underlying tort claims; it is "a separate but *dependent* damages claim deriving from a tort injury to another." *Finnegan ex rel. Skoglind v. Wis. Patients Comp. Fund*, 666 N.W.2d 797, 805 (Wis. 2003) (emphasis added). So the crux of this appeal concerns the viability of the negligence and premises-liability claims.

The two substantive claims mirror each other legally. In Wisconsin, as elsewhere, "[a] person is negligent when [he or she] fails to exercise ordinary care." *Gritzner v. Michael R.*, 611 N.W.2d 906, 912 (Wis. 2000) (alteration in original) (quoting Wis. JI—Civil 1005). "[T]he duty of ordinary care under the circumstances is determined by what would be reasonable given the facts and circumstances of the particular claim at hand." *Hoida, Inc. v. M & I Midstate Bank*, 717 N.W.2d 17, 30 (Wis. 2006). Moreover, Wisconsin common

law requires premises to be "reasonably safe."[1] *Gould v. Allstar Ins. Co.*, 208 N.W.2d 388, 391 (Wis. 1973). Both tort claims arise out of the injury Meghan sustained in the accident on the Black Hole slide at Wilderness's water park, and they turn on the same question: did Wilderness take the precautions reasonably required of a water-park operator to ensure that its water park remained reasonably safe for its guests?

To determine whether Wilderness acted reasonably under the circumstances, a jury must understand what is reasonably required of a water park of its kind. More specifically, Wilderness's duty of care is determined by what is reasonably required of water-park operators regarding the inspection, maintenance, and safety protocols of water parks in general and water slides like this one in particular. These are not questions that lay jurors can answer based on common knowledge or experience. "Where the specifics of a defendant's duty of care involve specialized knowledge, plaintiffs must introduce expert testimony to establish this element of a negligence claim." *Lees v. Carthage College*, 714 F.3d 516, 522 (7th Cir. 2013) (Wisconsin law) (citing *Payne v. Milwaukee Sanitarium Found., Inc.*, 260 N.W.2d 386, 392 (Wis. 1977)). "Expert testimony should be adduced concerning those matters involving special knowledge or skill or experience on subjects [that] are not within the realm of the ordinary experience of mankind, and [that] require special

---

[1] Wisconsin's Safe Place Statute, *see* WIS. STAT. § 101.11, imposes "a higher duty than the [common law] duty of ordinary care regarding certain acts by employers and owners of places of employment or public buildings." *Mair v. Trollhaugen Ski Resort*, 715 N.W.2d 598, 605 (Wis. 2006). The Faxels have not alleged a claim under the Safe Place Statute.

learning, study[,] or experience." *Payne*, 260 N.W.2d at 392; *see also Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, 685 (Wis. 2005).

The Faxels can't establish Wilderness's duty of care without expert testimony. The inspection, maintenance, and safety practices reasonably expected of water parks are not subjects that are within the realm of ordinary experience. Without expert testimony, jurors would be left to guess about the standard of care or infer a breach from the fact of Meghan's injury, neither of which is legally permissible.

The Faxels contend that Wilderness had a duty to repair the "dry spot" on the Black Hole ride after the March 2016 accident. But Wilderness contacted ProSlide, the manufacturer of the slide, to determine if the ride needed repairs. ProSlide advised Wilderness that the Black Hole was safe, and Wilderness continued daily monitoring of its performance. Perhaps a reasonable water-park operator might have acted differently, but expert testimony is needed to identify industry safety standards or other relevant evidence before a jury could reach this conclusion. So too for the allegation that Wilderness should have warned about dry spots or instructed riders on best practices when stuck on the slide. Without expert testimony to support this allegation, a jury would have no evidentiary basis to find that a reasonable water park has a duty to post a warning after one confirmed accident in tens of thousands of rides on the slide.

We note too that this is not a case of a clear or obvious lapse in safety measures. Wilderness followed safety procedures that seem reasonable on their face: supervisors carried out daily safety protocols designed to check water flow, detect maintenance or malfunction concerns, and confirm

that all water slides were operating properly, including a daily test ride. In the period leading up to Meghan's accident, tens of thousands of guests rode the Black Hole without noted injury or incident. Without expert testimony that these measures were insufficient by industry standards, the Faxels essentially ask that jurors be invited to speculate about the duty of care and that Wilderness's conduct violated it.

The Faxels point to the aquatics manager's email to ProSlide on the evening of Meghan's accident noting that "there was something wrong with the water pressure." But this email shows only that Wilderness was aware after the accident that the Black Hole had experienced a dry spot on that date and that a water-flow issue on the slide likely caused Meghan's injury. This evidence sheds no light on the central question about the duty of care Wilderness owed its guests. With that question unanswered, a jury could not conclude that the safety precautions and remedial steps that Wilderness took as part of its standard safety protocols failed to satisfy its duty.

The Faxels also rely on the incident in May 2016 in which a rider slid off her tube while riding the Black Hole, as well as the February 2017 report by ProSlide after it repaired the Black Hole. ProSlide's report noted that "[i]t was originally reported by the park that riders were becoming stuck in a 'dry spot' between the reverse injector and first forward injector." The Faxels claim that this evidence shows that more than one rider encountered dry-spot issues on the slide.

Again, without expert testimony, this evidence cannot establish a water park's duty of care in these circumstances.

The May 2016 incident report does not describe the cause or location of the rider's accident; no evidence indicates that the Black Hole had a "dry spot" at the time. Likewise, ProSlide's use of the word "riders" in its 2017 repair report does not support an inference that water-flow issues were common on the Black Hole. The record reflects that when ProSlide wrote this report, Wilderness had reported that two riders—one in March 2016 and Meghan Faxel in August 2016—had become stuck in a dry spot on the Black Hole.

A few loose ends remain before we close. Meghan cites two Wisconsin Supreme Court cases to support her argument that expert testimony is not necessary to prove her case. Both concluded that the plaintiffs did not need expert testimony, but neither addressed a factually analogous situation. In *Netzel v. State Sand & Gravel Co.*, 186 N.W.2d 258, 261–62 (Wis. 1971), the Wisconsin Supreme Court determined that an expert was not needed to prove that concrete handled by the plaintiff was defective; testimony from the job foreman, a "lay expert," and the fact that seven other construction workers were injured on the same day, was sufficient evidence to counter the defendant's argument that the concrete was safe. *Id.* at 262. *Netzel* shows only that expert testimony may not be needed where other testimony or evidence supports a determination that the defendant breached its duty of care. Here the Faxels do not have any evidence that would substitute for an expert.

In *Bruss v. Milwaukee Sporting Goods Co.*, 150 N.W.2d 337, 340–41 (Wis. 1967), the court concluded that expert testimony was not required because the defendant's employee had earlier reported several defects in the bleachers that caused the plaintiff's injury and because the defendant's president

acknowledged the defects just before the accident but did nothing. Again, the court's conclusion that expert testimony wasn't required in *Bruss* doesn't mean it's not needed in this case. The *Bruss* plaintiffs presented evidence that the defendant was aware of a dangerous defect immediately before the plaintiff's accident and took no action, but no such evidence exists here. Without an expert, the Faxels cannot show that Wilderness's many safety precautions—including daily safety inspections that checked water flow—did not satisfy its duty of care.

The Faxels' final argument fares no better. They assert that Wilderness had a nondelegable duty under Wisconsin law and thus could not rely on ProSlide's advice about the Black Hole after the March 2016 incident. This argument misunderstands Wisconsin's nondelegable-duty doctrine. Nondelegable duties are legal duties that the responsible party may not assign to another; in other words, if a duty is nondelegable, "[t]he person who has that duty … cannot assert that another to whom he has allegedly delegated the duty is to be substituted as the primary defendant in his stead." *Barry v. Emps. Mut. Cas. Co.*, 630 N.W.2d 517, 526 (Wis. 2001) (quotation marks omitted). Wilderness has not argued that it delegated its duty of care to ProSlide. Rather, it presented evidence of its consultation with ProSlide to demonstrate that it acted reasonably in response to the March 2016 incident. The nondelegable-duty doctrine has no relevance here.

In sum, without expert testimony the Faxels cannot prove any of their claims. The magistrate judge properly entered summary judgment for Wilderness.

AFFIRMED